## Charles B. Smith v. State of Nebraska.

Filed February 6, 1901.   No. 11,651.

1. **Evidence: Collateral Fact.** Testimony relating to a collateral fact was offered for the purpose of strengthening and corroborating the theory of the defense, and excluded. The relation of such fact to the main facts in the case appearing to be conjectural and uncertain, and affording no reasonable presumption as to the main issues, *held*, that the exclusion of such proposed testimony is not prejudicial error.

2. **Instructions: Motive.** The giving of the instruction copied in the opinion with relation to the want of motive for the commission of a crime, being a circumstance favorable to the innocence of the party accused, *held* not to be erroneous.

3. ————: **Circumstantial Evidence.** An instruction on circumstantial evidence was requested by the defendant, in which it was stated: "If there is any one single fact proved to the satisfaction of the jury which is inconsistent with the guilt of the defendant, this is sufficient to raise a reasonable doubt, and you should find him not guilty." *Held,* That such instruction was properly refused; first, because substantially the same propositions were embodied in other instructions given; second, because it did not restrict the jury to the consideration of material facts essential to the conclusion on which the guilt of the defendant was sought to be established; and third, it permitted the consideration of different facts as distinct and independent propositions, the true rule being, that the facts and circumstances on which reliance is placed for conviction must be considered and taken together.

4. **Conviction on Circumstantial Evidence.** To justify conviction on circumstantial evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proven by competent evidence beyond a reasonable doubt, and, when taken together or as a whole, must be of such a character as to be consistent with each other, and with the hypothesis sought to be established thereby, and inconsistent with any reasonable hypothesis of innocence.

5. **Instruction: Circumstantial Evidence.** An instruction as to the force and effect of circumstantial evidence, copied in the opinion, *held* to have been properly given.

6. **Self-Serving Statements: In Extremis: Res Gestæ.** Statements in one's own interest, self-serving in their nature, made soon after the commission of the homicide which such person was charged with having committed, even though made under the

apprehension of impending death, the person recovering, *held*, to be inadmissible as evidence, either as declarations *in extremis* or as a part of the *res gestæ*.

7. **Cross-Examination.** On cross-examination of a witness questions were asked as to alleged prior statements made by him regarding the action and conduct of the defendant, to which objection was made and sustained. *Held*, Such questions to be improper on cross-examination or for the purpose of laying a foundation for impeachment to affect the credibility of such witness, and the ruling thereon to be without error.

ERROR from the district court for Nemaha county. Tried below before STULL, J. *Affirmed.*

*H. A. Lambert, E. B. Quackenbush* and *Francis Martin*, for plaintiff in error.

*Constantine J. Smyth, Attorney General*, and *Willis D. Oldham, Deputy, contra.*

HOLCOMB, J.

The defendant, plaintiff in error, was charged with and convicted of the crime of murder in the first degree, the penalty being by the jury fixed at imprisonment in the penitentiary during life. The homicide charged in the information was the killing of the wife of the defendant by shooting with a revolver. It is disclosed by the record that the deceased came to her death from a bullet wound in her right temple; that at the same time the defendant received a wound from a bullet entering the right side and back part of his head, which ranged forward and came out above and in front of the right ear, the bullet penetrating only beneath the skin, and apparently deflected from its course by coming in contact with the skull. The tragedy occurred in the kitchen of the dwelling-house occupied by the defendant and deceased. The evidence on which the conviction was had was circumstantial. The defense interposed, and as conducted during the trial of the cause, was on the theory that the deceased first shot the defendant as he was

passing her while she was standing in the kitchen, caus-
ing the wound alluded to, the shock producing uncon-
sciousness for a short time, during which she fired the
fatal shot resulting in her own death.    A very short
time after the tragedy, after others had appeared on the
scene, the defendant, passing into an adjoining room,
shot himself with the same weapon through the stomach,
the ball entering a little to the side and above the navel,
ranging downward and through his body, and lodged so
as to be easily extracted from the hip.    The state sub-
mitted testimony regarding the circumstances surround-
ing the tragedy and regarding the location of the room,
furniture, etc., the finding of a bullet on the floor in one
part of the room; and to the absence of bullet marks on
the walls, doors or windows of the room.    The homicide
occurred April 22.    The trial began June 25 following.
During the introduction of testimony for the defense a
witness was called by whom it was sought to prove that
on the day previous (June 26) the witness had made an
examination of the room of the house in which the trag-
edy occurred and found a mark on the door, leading from
the kitchen to the sitting room, resembling the mark of
a bullet.    The question by which the testimony was
sought to be elicited was objected to and the objection
sustained.    Counsel for defendant then made the fol-
lowing offer: "Defendant offers to prove by this witness,
that on the 26th day of June this witness went to the
house of Smith with Mr. Schantz, who has had control
of the same and possession of it, and made an examina-
tion of the room for bullet marks and that on the door
between the kitchen and the sitting room about an inch
below the upper hinge of the door, he found a distinct
mark about the size of a 38 bullet that would have struck
lengthwise." And the following objection was made and
sustained, the ruling thereon being assigned as preju-
dicial error: "State objects, as the time fixed by the wit-
ness is three months after the shooting, and it has al-
ready been testified by persons who found the bullet that

they made careful examinations of the room the same
night the jury was there and there were no bullet marks
on either the windows or doors.  Incompetent.  Irrele-
vant.  Immaterial.  Sustained.  Exception." The tes-
timony was offered as tending to prove a circumstance in
support and corroboration of the theory of the defendant
relative to the question of how the shooting occurred
and who did the same.  We assume the testimony was
excluded because of the remoteness of time at which the
mark was discovered from the time of the principal trans-
action, and, under the circumstances, the proposed testi-
mony was regarded as of no evidentiary weight and ir-
relevant to the issues raised.

It appears from the record that for about ten days
after the homicide the defendant, with others, occupied
the premises for residence purposes, the last two or three
days of which the defendant had recovered from the
wounds received sufficiently to move about the rooms
and outside of the building.  After the defendant had left
the premises, one Schantz, the father of the deceased, had
control, but who had immediate possession or access to
the building does not appear.  The time elapsing from
the homicide to the finding of the mark, of which the
witness was interrogated, was sixty-five days.  Whether
or not in fact the mark was made by a bullet seems to be
purely conjectural, and whether it was made at the time
of the homicide and as a result of the shooting, which
then occurred, is even more uncertain.  Its connection
with the transactions under investigation can only be in-
ferred from the statement made in the offer that it was
a mark "about the size of a 38 bullet that would have
struck lengthwise."  This fact alone, it seems to us,
renders its connection with the principal facts so un-
certain as to destroy its relevancy, and the circumstances
as to time, and use and occupancy of the building, nega-
tive all probative force that otherwise it would possess.
Had the mark been discovered at or near the time of the
principal transaction, or were the proposed testimony

such as from it the jury would be warranted in deducing
the inference that it was made by a bullet fired at the
time of the death of the deceased or wounding of the de-
fendant, its relevancy and materiality could not be open
to question.  But when it is discovered more than two
months after the occurrence, and when the room had
been occupied, and open to all comers, with the oppor-
tunities for and probabilities of a similar mark being
made in countless ways, and without any means of
identification or connection with the transactions occur-
ring at the time of the homicide, it can hardly be said to
be more than mere speculative and conjectural evidence.
The question presented is entirely different from a case
where the circumstance, object or fact sought to be estab-
lished by proof as a collateral fact to the main issue,
though discovered long after the principal transaction,
is capable of identification and connection with the main
fact.  In the latter case, lapse of time and the element of
remoteness would not be so important and controlling
as in the former. "The rule," says POST, C. J., in *Blom-
gren v. Anderson*, 48 Nebr., 240, 242, in speaking of the
admission of testimony as to collateral facts corrobora-
tive of the principal contention of the parties to a case,
"as said by one author, 'excludes all evidence of collat-
eral facts which are incapable of affording any reason-
able presumption as to the principal matters in dispute;
and the reason is that such evidence tends needlessly to
consume the public time, to draw the minds of the jurors
from the points in issue, and to excite prejudice and
mislead; moreover, the adverse party, having had no
notice of such evidence, is not prepared to rebut it.  The
due application of this rule will occasionally tax to the
utmost the firmness and discrimination of the judge; so
that while he shall reject, as too remote, every fact which
merely furnishes a fanciful analogy or conjectural infer-
ence, he may admit as relevant the evidence of all those
matters which shed a real, though perhaps indirect and
feeble, light on the question in issue.  And here it will

generally be found that the circumstances of the parties to the suit, and the position in which they stood when the matter in controversy occurred, are proper subjects of evidence; and, indeed, the change in the law enabling parties to give testimony for themselves has rendered this proof of "surrounding circumstances" still more important than it was in former times.' (Taylor, Evidence, sec. 316; 1 Greenleaf, Evidence, sec. 52 *et seq.*)" Were we to indulge in presumptions and probabilities regarding the origin of the mark made on the door, it would seem that there are far stronger reasons for the conclusion that it was made in some accidental manner, possibly on purpose, by those coming and going in and about the house, and its apparent resemblance to a mark that might be made by a 38 calibre bullet is no more than a coincidence. A careful examination of the record forces upon us the conclusion that the remoteness of time, and uncertainty as to what relation it may sustain to the main facts in the case, render the proposed testimony of inconsequential value, if not entirely worthless as evidence. We do not think any substantial right of the defendant was impaired by the ruling of the trial court thereon.

At the request of the state the following instruction was given the jury, to which an exception was taken, and error is now sought to be predicated thereon: "The court instructs the jury that when the evidence fails to show any motive to make an assault or commit a crime this is a circumstance in favor of the innocence of the party accused. And in this case if the jury find upon a careful examination of all the evidence that it fails to show any motive, cause or reason on the part of Louise Smith to assault and murder the defendant then you should consider this fact in determining the truth or falsity of the claim made by the defendant that his wife first shot him and then killed herself." It is admitted by counsel for defendant that as an abstract proposition of law the instruction is without error, and that the sub-

ject dealt with therein may be properly argued by counsel, and may have probative force worthy of consideration by the jury; but it is contended that it is an argument from the bench, giving a negative phase undue prominence by singling out the one feature of the case and imputing to it special significance and force, and that the instruction practically casts upon the defendant the burden of proving a motive in his wife to commit the crime. That part of the instruction relative to the want of motive being favorable to the innocence of a party accused of crime is a correct expression of the law when applied to the case at bar, either as an abstract or concrete proposition, and is as favorable to the defendant as to the state. The principle contained in the instruction is approved of in *Clough v. State*, 7 Nebr., 320. Under the circumstances of the case at bar, the defendant was accused of the crime of killing the deceased, his wife. His defense was that the deceased first shot him and then took her own life. That the shooting was done by the one or the other with felonious intent is established by the evidence, not only to a moral certainty, but to a degree amounting almost to the certainty of a mathematical demonstration. The jury were called upon to judge of the defense interposed in connection with the truth of the charge against the defendant. The establishment by the evidence of one hypothesis as to the circumstances of the homicide necessarily excluded the other. The evidence as to the defendant's guilt was strengthened or weakened as the circumstances proved might or might not point to the wife as the assailant. In determining whether she in fact made the assault, as contended for by the defendant, it was proper to consider her motive or lack of motive to make the alleged assault. If no motive appeared, the probability of her having committed the crime alleged is lessened, and the jury would be correspondingly freer from doubt as to the truth of the charge against the defendant. "The truth or falsity of the claim made by the defendant that his

wife first shot him and then killed herself" is a subordi-
nate proposition included in the principal one in issue,
that the defendant made the assault and committed the
homicide.   If the jury disbelieved the subordinate propo-
sition, then stronger would be the reasons for the con-
clusion that the evidence proved, beyond all reasonable
doubt, that the charges made in the information were
true.   It is quite true that it is only necessary that, un-
der all the evidence, the jury should entertain a reason-
able doubt of the defendant's guilt, and the truth of the
matter claimed by him as a defense need not further be
determined.   But in the truth or falsity of the claim
made by him is also involved the truth of the charge
made by the state, and any fact or circumstance con-
nected with the substantive defense interposed is prop-
erly to be considered by the jury in determining the
weight and credit which should be given to the testimony
in support of the theory and hypothesis sought by the
defendant to be impressed upon them for the purpose of
raising a doubt as to the truth of the charge of the crime
imputed to him.   Under the issues, the jury were re-
quired to consider and pass upon the questions presented
by the defendant relative to his claim that his wife did
the shooting, to the extent, at least, as to whether such
evidence, in connection with all the other evidence,
raised a reasonable doubt of the defendant's guilt, and
in doing so it is apparent that the trial court might, with
propriety, instruct as to a circumstance proper for them
to consider in the determination of such question.   If,
from the evidence, no motive appeared for the wife to
make the assault, that fact, it seems reasonably clear,
was a matter pertinent and proper for the jury to con-
sider in weighing all the testimony and in arriving at a
verdict.   This was all that was said in the instruction,
and for that reason we find no error in its giving.   While
the language of the instruction is not fully approved, it
is in substance, we think, a correct expression of law, and
the matter spoken of is proper to be called to the atten-

tion of the jury in their consideration of the evidence and in arriving at a correct conclusion as to the truth of the charge made against the defendant. The instruction does not, we think, give undue prominence to any particular phase of the case, but rather is an application of an admittedly sound rule of law to the evidence in the case, and is calculated to assist the jury in applying and weighing the evidence before them.

An instruction on the rule as to circumstantial evidence was requested by the defendant, in which, among other things, it was stated: "If there is any one single fact, proved to the satisfaction of the jury, which is inconsistent with the guilt of the defendant, this is sufficient to raise a reasonable doubt, and you should find .him not guilty." The refusal to .give the instruction is assigned as error. Other instructions relating to the same subject, and covering substantially the same proposition, save possibly the portion quoted, were requested and given. The ruling of the trial court should probably be sustained on the ground that the same subject was covered in other instructions given, and to give the one requested and refused would be substantially a repetition. We think the instructions faulty, however, in not restricting the jury to facts material to the issues and essential to the conclusion of guilt. The range allowed, and the field to which the jury's attention was invited by the instruction, in' finding a single fact inconsistent with guilt, is too broad and general, and manifestly tends to mislead rather than assist in reaching correct conclusions. The instruction also appears objectionable in directing consideration of each fact and circumstance as a distinct and independent proposition, rather than its consideration in the light of, and with relation to, all other facts and circumstances proven on the trial. We understand the rule to be that the facts and circumstances necessary to the conclusion sought to be established, to justify a conviction on circumstantial evidence, must be proven by competent evidence beyond a rea-

sonable doubt, and, when taken together, or as a whole, must be of such a character as to be consistent with each other and with the hypothesis sought to be established thereby, and inconsistent with any reasonable hypothesis of innocence. This court has said, to warrant a conviction of crime on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved by competent evidence beyond a reasonable doubt (*Walbridge v. State*, 13 Nebr., 236; *Bradshaw v. State*, 17 Nebr., 147), and that the circumstances relied upon must be of such a character that, when taken together, they are of so conclusive a nature and tendency as to lead to a satisfactory conclusion and produce in effect a reasonable and moral certainty that the accused, and no one else, committed the offense charged. It is essential that the circumstances, taken as a whole, and giving them their reasonable and just weight, and no more, should, to a moral certainty, exclude every other hypothesis except that of the guilt of the accused. *Casey v. State*, 20 Nebr., 138. Says the supreme court of Texas, in *Brooken v. State*, 9 S. W. Rep., 735: "To warrant a conviction on circumstantial evidence, each fact necessary to the conclusion sought to be established must be proved beyond a reasonable doubt; all the facts (that is, the necessary facts to the conclusion) must be consistent with each other and with the main fact sought to be proved; and the circumstances, taken together, must be of a conclusive nature, leading on the whole to a satisfactory conclusion, and producing, in effect, a reasonable and moral certainty that the defendant committed the offense charged."

The following instruction given to the jury is excepted to: "Circumstantial evidence is to be regarded by the jury in all cases. It is many times quite as conclusive in its convincing power as direct and positive evidence of eye witnesses. When it is strong and satisfactory, the jury should so consider it, neither enlarging nor belittling its force. It should have its just and fair weight with the

24

jury; and if, when it is all taken as a whole and fairly and candidly weighed, it convinces the guarded judgment, the jury should act on such conviction. You are not to, fancy situations and circumstances which do not appear in the evidence, but you are to make those just and reasonable inferences from circumstances proven which the guarded judgment of a reasonable man would ordinarily make under like circumstances." We do not think the execption well taken. The instruction fairly states a rule applicable to the force and effect to be given circumstantial evidence. It occurs to us that it is a conservative statement of the rule announced. The rule, stated in stronger language than in the present instance, is approved in *Davis v. State,* 51 Nebr., 301. The rule as announced has received judicial sanction in many other jurisdictions. It does not appear to us that it permits a conviction on a preponderance of the evidence, as suggested. The jury are told in other instructions that they must be convinced of the truth of the charge beyond a reasonable doubt. The instruction does not purport to speak of the requisite degree of proof, but of the consideration to be given circumstantial evidence and the effect thereof. We find no error in the giving of this instruction.

On cross-examination one Schantz, a witness for the state and father of the deceased, was asked numerous questions relative to purported statements theretofore made by him as to the action and conduct of the defendant, which, if believed, would tend to prove that such acts and conduct were those of an insane rather than of a sane person. The testimony thus sought to be elicited was proper neither as cross-examination nor to lay the foundation for impeachment for the purpose of affecting the credibility of the witness. It was in no way contradictory or inconsistent with testimony given in the examination in chief of the witness in regard to certain actions and statements of the defendant in the nature of threats against, and showing ill will towards, the de-

ceased.   While the evidence might have been proper as evidence in chief under a defense where insanity was a plea, it was, as we view the record, entirely improper and rightly excluded in the cross-examination of the witness.

Certain questions were asked a witness for the defense for the purpose of proving that soon after the tragedy had occurred the defendant had made statements exculpatory of guiltiness on his part of the act of shooting the deceased, and declaring, as was his testimony on the trial, that the shooting was done by the deceased.   The reputed statements were made while the defendant was lying in the room where he shot and wounded himself, and after a physician and officer had been called, and some little time after he had been accused by the father of the deceased with the shooting.   The statements do not appear to be a part of the *res gestœ*.   Other statements of the same character, of which testimony was offered and excluded, it is claimed, were shortly afterwards made while the defendant was lying in bed, after an examination by a physician and under the apprehension that the wounds were fatal.   The evidence, we think, was properly excluded.   We know of no rule of law under which it could have been admitted.   It was at most a statement by the defendant favorable to his own innocence, and was self-serving in its nature.   The defendant, having recovered, was a competent witness in his own behalf, went upon the stand and testified to substantially the same statements before made, as claimed, regarding the matter, and this testimony could not properly be buttressed by his prior statements of the same character to others.

Lastly, it is earnestly insisted that the evidence is not sufficient to support the verdict of the jury and the judgment of the court rendered thereon.   To this contention we can not give our assent.   A full examination of the record leads to the conclusion that the evidence not only supports the verdict, but that it so strongly points to the

conclusion reached as to clearly exclude every other
rational supposition or hypothesis.  The evidence shows,
or tends to show, that the defendant suspected the de-
'ceased of being unfaithful to him; that this rankled in his
mind so strongly that he had threatened to take the life
of both; that he had been violently demonstrative towards
the deceased regarding the matter.  Whether there was
substantial ground or reason for the views entertained
by him regarding the question of the deceased's infidelity
is not a matter presented for consideration under the
record before us.  That the fact existed is abundantly
shown by the evidence.  At the time of the tragedy the
positive evidence shows that while defendant was sitting
or standing on the porch opening into the room where the
tragedy occurred, the deceased came out and called to
their little boy to come home, and immediately returned
to the room, closely followed by the defendant, who
pushed open the door after her, as testified to by one
witness, his hand on his hip, following her into the room;
and in a very short period of time two shots were heard
in quick succession, one of which terminated the life of
the deceased and the other produced the wound on the
defendant's head.  In a short time others came into the
room, and the defendant was in possession of the re-
volver, and branishing the weapon, ordered the father
of the deceased out of the room and then passed to an
adjoining room, where a shot was fired by him, produc-
ing the wound in the stomach spoken of.  He had pur-
chased shortly previous the weapon with which the shoot-
ing was done.  He said it was purchased for the purpose
of shooting another with whom his wife was criminally
intimate.  He was resentful towards her.  He fancied she
had wronged him.  He threatened to do what appears
in fact to have been done.  All the material facts and
circumstances proven on the trial point unerringly to the
conclusion that he committed the act.  When taken and
considered together, they are consistent with the hypoth-
esis of guilt on his part and inconsistent with any other

rational theory or conclusion. It is true that the defendant's testimony as to the occurrence resulting in the homicide, if believed, would be inconsistent with his guilt. But the jury had the right to reject and disregard the testimony as improbable and untrue. It furnished no sufficient basis for the unavoidable conclusion of an essential fact proven connected with the transaction inconsistent with the hypothesis of guilt. *Carleton v. State*, 43 Nebr., 373, 394. Under the issues joined in the case, we entertain no serious doubt of the defendant's conviction being justified by the evidence and in conformity with law, and the judgment should therefore be affirmed, which is accordingly done.

AFFIRMED.