## MICHAEL LAMB v. STATE OF NEBRASKA.

### FILED JUNE 3, 1903. No. 12,827.

1. **Criminal Law: AIDER, ABETTER OR PROCURER.** One by whose incitement or instigation a felony is committed, when he is neither actually nor constructively present, is an aider, abetter or procurer within the meaning of section 1 of the criminal code.

2. ———: ———. Section 1 of the criminal code which was adopted in 1873, is applicable to all acts made felonies by subsequent legislation.

3. **Information: DEMURRER.** An information which, after charging larceny in the usual form, alleges in substance that the defendant did feloniously and purposely aid, abet and procure the thief to commit the crime, is not demurrable on the ground that it states a mere legal conclusion.

4. **Jury.** A person informed against for a felony, after the regular panel has been discharged, may be lawfully tried by a jury summoned under the provisions of section 664 of the code.

5. **Instructions.** An instruction, which informs the jury that the material facts charged in the information must be established by the evidence beyond a reasonable doubt, is unobjectionable, if supplemented by other instructions clearly indicating what facts are material.

6. ———: CIRCUMSTANTIAL EVIDENCE. The court in effect charged, (1) that circumstantial evidence, to warrant a conviction, must be of such a character as to exclude every reasonable hypothesis excepting only the one implying defendant's guilt; (2) that every incriminating circumstance which may be considered as evidence of guilt must be proved to a moral certainty or beyond a reasonable doubt. *Held*, To be a correct statement of the law and to include every material feature of the instructions upon that point requested and refused.

7. **Evidence.** The word "evidence," when used in an instruction, is understood to include all the means employed at the trial to ascertain the truth respecting the matters in dispute.

8. **Larceny: EVIDENCE.** On the trial of an information charging larceny of cattle, it is not error to receive in evidence the hides of the animals obtained from a packing house in another state.

9. ———: ———. A photograph, used for the purpose of identifying a person implicated in the theft of cattle, is admissible in evidence without showing when, where or by whom it was taken.

10. **Declarations.** On the trial of a person charged with instigating another to steal cattle, the declarations of the thief while en-

gaged in the perpetration of the crime are admissible in evidence as part of the *res gestae.*

11. ———: CONSPIRACY.   When a conspiracy is once shown to exist by the requisite *quantum* of proof, the acts and declarations of each of the conspirators, in furtherance of the common design, are the acts and declarations of all.

12. Conspiracy.   A conspiracy to steal and sell cattle does not end with the theft, but continues at least until the sale has been made.

13. Instructions.   Instructions tendered and refused examined and found to contain no correct and pertinent proposition of law, not embraced in the general charge.

14. Instruction Not Based on Evidence.   There being no evidence tending to prove that defendant was present when the alleged crime was committed, it was not error to refuse to instruct on the assumption that he was present.

15. Defendant's Failure to Testify.   The prohibition contained in section 473 of the criminal code against referring to, or commenting upon, the failure of an accused person to testify, was intended as a restraint upon the prosecuting attorney and, to some extent, upon the court as well.

16. Evidence.   Evidence examined, and found sufficient to support the verdict.

ERROR to the district court for Greeley county: JOHN R. THOMPSON, DISTRICT JUDGE.   *Affirmed.*

*Thomas J. Doyle, George W. Berge, H. C. Vail* and *John M. Ragan,* for plaintiff in error.

*Frank N. Prout, Attorney General,* and *Norris Brown, contra.*

SULLIVAN, C. J.

Michael Lamb, a Greeley county farmer, was informed against under section 1 of the criminal code which is in part as follows:

"If any person shall aid, abet or procure any other person to commit any felony, every person so offending shall, upon conviction thereof, be imprisoned in the penitentiary for any time between the respective periods for which the

principal offenders could be imprisoned for the principal offense."

The trial resulted in a conviction. The sentence imposed is imprisonment in the penitentiary for a term of nine years. On account of the severity of the punishment, and because counsel for defendant seem to be deeply penetrated by the conviction that the jury who found their client guilty was touched and swayed by a hostile public sentiment, we have gone over the entire record with the utmost care.

One's first impression after reading the bill of exceptions is that the conclusion reached by the jury was the only one possible; and this impression is not in the least weakened by reflection or by counsel's analysis of the evidence. If Lamb is not guilty, he is the victim of a most extraordinary combination of circumstances. The errors assigned are too numerous to be separately noticed in this opinion. They are, for the most part, without color or semblance of merit. The main facts which the evidence adduced by the state establishes or tends to prove are briefly these:

On the morning of April 23, 1902, two bunches of fat cattle from Greeley county were moving on converging lines toward Cedar Rapids, a shipping station on the Union Pacific road in Boone county. One bunch, consisting of ten head of steers, was in charge of Harry Hill and Verne Stewart. These cattle belonged to the firm of Rooney & Company and had been stolen the night before. The other bunch, consisting of cows, heifers and steers, was owned by the defendant and under his personal control. Hill and Stewart were first to arrive at Cedar Rapids. They put the stolen cattle in the shipping yard and then rode back in the direction from which the defendant was coming. A short distance from town they found him with his cattle loitering by the roadside. They stopped, dismounted and talked with Lamb for a few minutes and then separated. Stewart went toward the Lamb farm and Hill turned back and helped drive the

cattle to Cedar Rapids where they were put into the ship-
ping yard with the stolen steers. Afterwards, on the same
day, the two bunches, making just a car-load, were con-
signed to a South Omaha commission firm, by whom they
were sold. Lamb accompanied the cattle to South Omaha
and received from the consignee the entire proceeds of the
sale. Hill, on the afternoon of April 23, was seen leaving
Cedar Rapids riding his own horse and leading the de-
fendant's. Hill worked for Lamb in 1891, and both he
and Stewart were at the Lamb residence less than a week
before the Rooney cattle were stolen. One of the wit-
nesses for the state who met Lamb on the road to Cedar
Rapids suggested to him that he did not have enough
cattle to make a car-load. To this suggestion Lamb re-
plied that he intended to buy a few more after he got to
town. The hypothesis of the state was that defendant in-
cited and instigated Hill and Stewart to steal the ten
head of steers from Rooney & Company, and that the
meeting at Cedar Rapids and the shipment and sale of
the cattle came about, not by accident, but in accordance
with a carefully prearranged plan. The theory of the
defense was that Lamb drove twenty-five head of cattle
from his farm to Cedar Rapids on the morning of April
23, and that all the cattle shipped by him to South Omaha
on that day were his. He did not himself testify in sup-
port of this theory, but he produced several witnesses who
gave evidence tending to sustain it. Hill was present at
the trial, but did not testify. That Hill and Stewart stole
the steers in question and drove them to Cedar Rapids is
indisputably established. And in view of the inculpatory
circumstances already mentioned, and others of less im-
portance to which no reference has been made, it is, in
our opinion, morally certain that what the defendant and
Hill and Stewart did on April 23 was preconcerted; that
every act, including the theft of the cattle, was an act
done in the execution of a common design. The law of
the case is very plain. If the cattle were stolen as alleged,
and if Lamb was an accessory before the fact, that is, if

by his command, request, advice or suggestion the crime was committed when he was neither actually nor constructively present, he was an aider, abetter or procurer within the meaning of the statute above quoted. *Walrath v. State,* 8 Neb. 80; *Hill v. State,* 42 Neb. 503; *Dixon v. State,* 46 Neb. 298; *Casey v. State,* 49 Neb. 403.

We will now notice specifically the points most strongly urged in support of the claim that the conviction was the result of errors committed by the district court at and before the trial. The demurrer to the information was, in our judgment, rightly overruled. The facts pleaded constitute a crime. Cattle stealing has been a felony since 1895; and section 1 of the criminal code in plain terms declares that any person who procures another to commit a felony shall be punished by imprisonment in the penitentiary. The theory of counsel for defendant, that this section, which was adopted in 1873, has no reference to acts made felonies by subsequent legislation, has no foundation in the language of the section, nor in reason, judicial decisions or legal analogy. The offense is charged in the usual manner; approved forms were closely followed, and it can not be said that the defendant was not fairly apprised of the criminal conduct imputed to him in the information. Maxwell, Criminal Procedure, 497; 9 Ency. Forms, 739; Wharton, Criminal Law (8th ed.), sec. 221; *Commonwealth v. Adams,* 127 Mass. 15.

The motion to quash the special panel because it was not composed of men whose names had been selected by the county board was properly overruled. Before the information was filed, the law cases for the April term had been disposed of and the regular jury had been discharged. It was, therefore, entirely proper for the court to proceed under the authority conferred by section 664 of the code. *Carrall v. State,* 53 Neb. 431; *Dinsmore v. State,* 61 Neb. 418.

In the sixth paragraph of the court's charge, it is said that proof beyond a reasonable doubt of every material fact alleged in the information is essential to a conviction.

This instruction is assailed, but we think it is neither positively nor negatively bad.  It embodies a correct proposition of law; it is good as far as it goes; and it is adequately supplemented by other instructions in which there is a clear statement of the facts which the state was required to prove.  There seems to be no reason at all for supposing that the jury misconceived the issue.

The action of the court in giving and refusing instructions on the subject of circumstantial evidence is approved. The propositions given were: (1) that circumstantial evidence, to warrant a conviction, must be of such a character as to exclude every reasonable hypothesis excepting only the one implying defendant's guilt; (2) that every incriminating circumstance which the jury are authorized to consider as evidence of guilt must be established to a moral certainty, or beyond a reasonable doubt.  These are correct statements of the law (*Davis v. State,* 51 Neb. 301 ; *Morgan v. State,* 51 Neb. 672; *Johnson v. State,* 53 Neb. 103; *Smith v. State,* 61 Neb. 296), and the difference between them and the instructions refused is merely a difference in phraseology.

Instruction No. 14, dealing with the testimony of impeached witnesses, is criticised on the assumption that it ignores the element of corroboration by circumstances. Evidence includes all the means by which an alleged matter of fact is established or disproved.  So when the court told the jury that they were at liberty to disregard the testimony of impeached witnesses, except in so far as they had been corroborated by other trustworthy evidence, he did not exclude from their consideration corroborative circumstances.

We have examined all the instructions tendered by counsel for defendant and refused by the court, and find in them no correct and pertinent proposition of law that is not embraced in the general charge.  The accusation against Lamb was that he "did aid, abet and procure" Harry Hill to steal the Rooney cattle.  Counsel for defendant, at the trial in the court below and in the argu-

ment here, seem to have overlooked the fact that a conviction was warranted by proof of any act done or word spoken which in legal contemplation amounted to either aiding, abetting or procuring. The jury were justified in finding the defendant guilty, without determining just what he said or did to incite or induce Hill and Stewart to steal the cattle.

The declarations made by Hill, while on the road to Cedar Rapids, were properly submitted to the jury. They were clearly competent as part of the *res jestæ*. They emanated from the criminal transaction and were virtually part of it. Besides the evidence was quite sufficient to establish *prima facie* the existence of a common purpose and design to steal and sell the Rooney cattle. The sale had not yet been made. The conspiracy was still pending, and consequently the acts and declarations of each of the conspirators in the prosecution of the unlawful enterprise, or with reference to it, were the acts and declarations of all. *Stratton v. Oldfield,* 41 Neb. 702; *Seville v. State,* 49 Ohio St. 117; *Spies v. People,* 122 Ill. 1,237; *Baker v. State,* 80 Wis. 416; *State v. Thaden,* 43 Minn. 253; 4 Am. & Eng. Ency. Law (1st ed.), 621; 3 Greenleaf, Evidence (16th ed.), sec. 94.

The hides of two of the stolen steers were brought into court and exhibited to the jury over defendant's objection. In this there was no error. It was evidence tending strongly to prove that the animals were dead, and in connection with other evidence tended to show that they had been stolen and sold by some one on the South Omaha market. Two photographs of Verne Stewart taken after he had been killed and while lying in his coffin were received in evidence, and we are of opinion that they were rightly received. They were used only for purposes of identification, and we can not perceive the necessity of showing, as a foundation for their introduction, when, where, by whom or under what circumstances they were taken.

The complaint that the witness Fonda used a memo-

randum in giving his evidence without showing when or by whom it was made, is not sustained by the record. Neither is there in the record any competent evidence in support of the claim that the opening argument of the county attorney evoked a burst of applause from the bystanders. No such claim seems to have been brought to the attention of the court on the argument of the motion for a new trial.

The refusal of the court to tell the jury that defendant could not be convicted if he was a principal in the second degree was not error. There is, in our opinion, no evidence tending to prove that Lamb was present when the cattle were stolen, or that he was near enough to give aid or encouragement in the perpetration of the crime.

The court was asked to charge that the law did not permit comment on defendant's failure to testify, and that the jury should neither indulge any presumption against him, nor assume that any fact was admitted, by reason of such failure. This request was refused, but the court said in the 13th paragraph of the general charge:

"You are instructed that while the statute of this state provides that a person charged with crime may testify in his own behalf, yet he is under no obligation to do so, and the statute expressly declares that his neglect to do so shall not create any presumption against him."

It may well be doubted whether the beneficent purpose of the statute is not in some measure thwarted by the giving of an instruction which pointedly directs the attention of the jury to the fact that the accused might have been, but was not, a witness in his own behalf. However, it is now settled doctrine in this state that the giving of an instruction like the one above set out is not error. *Metz v. State,* 46 Neb. 547; *Ferguson v. State,* 52 Neb. 432. The jury may be told that the failure of the defendant to testify does not create any presumption against him, but our decisions give no countenance to the claim that the court must, if requested, direct them to refrain from commenting on the fact that he did not avail himself of his

statutory privilege. The prohibition against reference to, or comment upon, the failure of an accused person to testify was evidently intended as a restraint upon the public prosecutor and, with the exception indicated by our previous decisions, upon the court as well. *State v. Robinson*, 117 Mo. 649; *State v. Weems*, 96 Ia. 426; *State v. Pearce*, 56 Minn. 226; *Sullivan v. State*, 9 Ohio C.C. 652; 11 Ency. Pl. & Pr. 352.

No material error appearing in the record the judgment is

AFFIRMED.