[Crim. No. 937. Second Appellate District, Division One.—January 23, 1923.]

THE PEOPLE, Respondent, v. W. R. GOULDING, Appellant.

[1] CRIMINAL LAW — ROBBERY — INSTRUCTIONS—REASONABLE DOUBT—EVIDENCE.—On appeal from a judgment of conviction on a charge of robbery, the defendant may not predicate error on an instruction, given at his request, that "If there is one single fact proved to the satisfaction of the jury by a preponderance of the evidence, which is inconsistent with the guilt of the defendant, this

is sufficient to raise a reasonable doubt, and in such a case the jury should find the defendant not guilty."

[2] ID.—INCONSISTENT INSTRUCTIONS.—A litigant who presents to the court two instructions and such that, if one of them be given, consistency demands that the other be refused, cannot be heard to complain of the action of the court in erroneously deciding between them.

[3] ID. — REPUTATION FOR PEACE AND QUIET — EVIDENCE — INSTRUCTIONS.—In a prosecution on a charge of robbery, notwithstanding no evidence is offered affecting his reputation for peace and quiet, the defendant is not prejudiced by an instruction that "if you find from the evidence beyond a reasonable doubt that the defendant is guilty, then you should so find, notwithstanding proof of his good general reputation for peace and quiet," particularly where at his request the jury is instructed that "defendant is presumed to be of good character for the traits involved, namely, for peace and quietness, until such presumption is overcome by credible evidence in the case."

[4] ID.—FAILURE OF DEFENDANT TO TESTIFY—INSTRUCTIONS.—It is entirely proper to instruct the jury "that the defendant in a criminal action is not required to take the stand and testify. His neglect or refusal to be a witness cannot in any manner prejudice nor be used against him on the trial or proceeding."

[5] ID.—COMMISSION OF CRIME BY ANOTHER—REJECTION OF EVIDENCE —ERROR WITHOUT PREJUDICE.—In this prosecution on a charge of robbery, the court should have received the testimony offered by defendant and which would have had a tendency to establish that a certain third person alone committed the robbery, but the evidence in the case having shown defendant's guilt beyond a reasonable doubt, the failure of the court to receive such proffered evidence did not constitute reversible error.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. W. Judd, Stanley Visel and Wm. Durham for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney, Deputy Attorney-General, for Respondent.

---

3. Evidence and instructions as to character of accused, notes, Ann. Cas. 1913E, 16; Ann. Cas. 1913D, 407; 20 L. R. A. 609.

HOUSER, J.—Defendant was convicted on a charge of robbery. The case comes to this court on the clerk's transcript and the reporters's transcript only. In other words, no briefs on either side have been filed in the case. [1] However, defendant's counsel on oral argument has submitted several reasons for a reversal, the first of which being that the learned judge of the trial court erred in giving a certain instruction to the jury, which was requested by defendant. It is as follows:

"If there is one single fact proved to the satisfaction of the jury by a preponderance of the evidence, which is inconsistent with the guilt of the defendant, this is sufficient to raise a reasonable doubt, and in such a case the jury should find the defendant not guilty."

No reason was assigned by appellant's counsel, and none appears to this court, showing how or in what possible manner defendant was, or even might have been, prejudicially affected by the giving thereof. It is altogether in appellant's favor—not a word nor a syllable which does not suggest the propriety, if not the absolute duty, of the jury to find the defendant not guilty, provided there be a single fact established by a preponderance of the evidence inconsistent with his guilt. It would seem unnecessary to point out that a defendant who offered such an instruction and which was given at his request, should be estopped to claim any damage to his case by reason of its having been submitted to the jury for its consideration. He must at least show that prejudice resulted to him. Reason is abundant and authorities numerous to the effect that an appellant is in no position to complain of instructions, even though erroneous, which are given at his own request. A familiar principle to the effect that no man may profit by his own wrong, would seem to be a sufficient answer to appellant's contention in this regard.

The second alleged error of which appellant complains deals with the refusal of the court to give the following instruction:

"It is not necessary for the defendant to establish his defense beyond a reasonable doubt, nor even to establish it by a preponderance of proof; it is sufficient for him to raise

a reasonable doubt of his guilt, and in such a case it is your duty to return a verdict of acquittal.''

The essential elements of this instruction, at least as far as defendant is to be benefited thereby, are amply covered by other instructions given by the court. But counsel contends that the instruction in question, while accurate in its statement of the law, conflicts with the first instruction which has already been noticed. If it may be considered as conflicting with any instruction which was offered by the defendant and given by the court, appellant is in no position to complain. He cannot, even unintentionally (and the court absolves defendant's counsel from any intentional wrongdoing in the premises), set a trap in that manner for the court and assume that he may reap the benefit of the court falling into it. [2] A litigant who presents to the court two instructions and such that, if one of them be given, consistency demands that the other be refused, cannot be heard to complain of the action of the court in erroneously deciding between them. It is a sound principle, as well as a most salutary one, that a party cannot be heard to complain of an error which he himself has been instrumental in bringing about. (*Missouri Pac. R. Co.* v. *Fox*, 60 Neb. 531 [83 N. W. 744].)

[3] Following the oral argument presented by counsel for appellant, the next alleged error consists in the giving of the following instruction, which was requested by the people:

''The court instructs the jury that if you find from the evidence beyond a reasonable doubt that the defendant is guilty, then you should so find, notwithstanding proof of his good general reputation for peace and quiet.''

Appellant complains that there was no evidence offered affecting the reputation of defendant for peace and quiet; but the presumption of law is that his reputation for these traits is good, and until such presumption be overcome by credible evidence the jury is bound to so consider it—just the same as though without such presumption evidence has been introduced to that effect. Indeed, counsel for defendant presented an instruction, and which was given by the court, covering, among other things, the matter completely in the following words: '' . . . and in this case defendant is presumed to be of good character for the traits involved, namely, for peace and quietness, until such presumption is

60 Cal. App.—35

overcome by credible evidence in the case." In the circumstances it is difficult, if not impossible, to conceive of any possible prejudice resulting to defendant from the giving of the instruction of which appellant complains.

[4] The last instruction given by the court at the request of the people and of which complaint is made by appellant, reads as follows:

"You are instructed that the defendant in a criminal action is not required to take the stand and testify. His neglect or refusal to be a witness cannot in any manner prejudice him nor be used against him on the trial or proceeding."

. Section 1323 of the Penal Code provides, in part:

"A defendant .in a criminal action or proceeding cannot be compelled to be a witness against himself; . . . His neglect or refusal to be a witness cannot in any manner prejudice him nor be used against him on the trial or proceeding."

It will thus be seen that there is no practical difference between the instruction given and that part of the section of the Penal Code herein set forth. Counsel for appellant contends that defendant was prejudiced in that the court thereby emphasized the fact that defendant did not testify; and further suggested at least that he had a right to be heard if he desired to do so, but that he was "not required to take the stand and testify." Ruling upon a similar objection in the case of *State* v. *Fuller,* 34 Mont. 12 [9 Ann. Cas. 648, 8 L. R. A. (N. S.) 762, 85 Pac. 369], the court, by Brantly, C. J., said:

"The defendant was not sworn as a witness. This fact was apparent to the jury. The court was perhaps not bound to instruct the jury with reference to this fact. It was entirely proper, however, if the court chose to do so, to inform the jury, as it did, that the fact that defendant failed to testify could not be used to his prejudice. In any event, the instruction was favorable to defendant, and for that reason he has no right to complain of it."

Within the presumption that everyone knows the law may safely be included the knowledge on the part of the individual members of the jury that the defendant is a competent witness in his own behalf. All jurors do not know that it is optional with a defendant whether or not he take the

witness-stand; and certainly the average person without any experience as a juror in criminal cases does not know that the neglect of a defendant to be a witness cannot be used in any manner against him. Indeed, it is common knowledge that the every-day citizen, upon having his attention directed to the fact that a given defendant has failed to avail himself of an opportunity to take the witness-stand, immediately construes such failure on the part of the defendant as an admission of guilt. The jury must take the law of the case from the court. The law containing the instruction on which error is predicated is clearly in favor of defendant. It suggests to the jury the danger to the defendant and warns the jury not to construe against the defendant his failure to take the stand in his own behalf. The instruction is altogether salutary, for the benefit of the defendant, and of which he ought not to be heard to complain. (See *State* v. *De Witt,* 186 Mo. 61 [84 S. W. 956]; *Lamb* v. *State,* 69 Neb. 212 [95 N. W. 1050].)

In order that the next alleged error may be better understood, it becomes necessary to make a somewhat lengthy review of the principal facts as shown by the evidence: An elderly man named Griffin, Mrs. Griffin (who was the daughter-in-law of Griffin), a Mrs. Leslie, and a man named Hicks left Los Angeles on or about April 1, 1922, in an automobile for the purpose of visiting some friends of theirs named Humphries who lived in the town of Tujunga. They arrived at their destination at about 4 or 5 o'clock in the afternoon and remained there until about 8:30 or 9 o'clock P. M. of the same day. While at the Humphries home the guests, together with the hosts and some others who were present, partook of a repast consisting of sandwiches and some sort of intoxicating liquor. On the return trip the automobile containing the party was driven by Mrs. Leslie until the city of Glendale was reached. None of the members of the party was familiar with the roads in that locality, and somewhere within the city of Glendale the auto was stopped for the purpose of ascertaining the road to Los Angeles, at which time defendant Goulding, who had been standing on the sidewalks, accompanied by two men named Allen and Brown, respectively, jumped on to the running-board of the automobile in which Mr. Griffin and his party were riding and, after stating that he was the chief of police

of Glendale and that his companions were officers, inquired, among other things, what was wanted. He stated that because of the actions of the party, the members thereof might be arrested, etc. Being informed that they had lost their way, defendant offered to drive them to their home in Los Angeles, which was actually done by Brown (one of defendant's companions)—he taking Mrs. Leslie's place at the wheel alongside of Hicks, and Mrs. Leslie, together with defendant Goulding and Allen, riding in the tonneau of the automobile with Mr. Griffin and the young Mrs. Griffin. On arriving at their destination in Los Angeles at about 10:30 o'clock P. M., an alleged robbery by defendant Goulding of Mr. Griffin took place; Mr. Griffin and Mrs. Griffin testifying that defendant, by means of force took from Griffin his pocketbook containing a twenty-dollar bill and a stickpin; that he then backed out of the auto and ran away; Mr. Griffin was calling out, "Stop that man! He robbed me"; and Mrs. Griffin, while the robbery was taking place, trying to hold defendant's arm and asking, "What are you doing that to that old man for?" No effort was made at the time to apprehend defendant, for the reason apparently that he was a much larger and stronger man than any of the others in the party. After the robbery had occurred and all but Mr. Griffin had gone into the house where they were living, it is in evidence that defendant returned to the scene and robbed Mr. Griffin the second time, on which occasion he secured a ladies' small gold hunting-case watch and a silver dollar. The second robbery took place between the house at which Mr. Griffin was stopping and another house about twelve feet distant, and the entire second robbery was witnessed by a Mrs. Holmes from her bedroom, which was directly opposite the scene of the second robbery. Her testimony is a clear corroboration of Griffin's testimony as to what occurred at that time, and her identification of defendant is clear and positive. Defendant was not the chief of police of Glendale, nor an officer at all, but two or three days after the robbery, when defendant was in the office of the real chief of police of Glendale, in the presence of the chief and two other officers, he denied that he was in the automobile with Griffin and his party, or with them at all. Defendant did not take the witness-stand; neither did either Allen or Brown, the two men who were with defendant—the

only evidence of any real importance introduced in defendant's behalf being that of Mrs. Leslie and Hicks. Mrs. Leslie, whose testimony is mainly negative, is contradicted in many details by disinterested witnesses. Both she and Hicks declared that they neither saw nor heard on the part of Griffin and Mrs. Griffin anything that would indicate that a robbery was taking place in the automobile, although Mrs. Leslie was in a position where she might readily have seen all that was transpiring had it not been, according to her own testimony, for the attentions which she was receiving from Allen, consisting of her being hugged and kissed by him, which attentions on the part of Allen she said she generously divided between herself and Mrs. Griffin; also that she had eight or ten or more drinks of brandy while she was in the Humphries home. Her testimony also showed that she had considerable feeling against Mrs. Griffin at the time of the trial. Hicks had his back to the scene. He testified that when the auto stopped at Mrs. Leslie's home, there was some commotion in the back of the car; Goulding, the defendant, backed out first; didn't see any robbery; couldn't see very well; it was dark there; there was no scream nor any blows struck that he knew of; didn't hear the remark ascribed to Mrs. Griffin: ''What are you hitting him for?'' Hicks said he wasn't drunk, but that he had had a couple of drinks of whisky and four or five drinks of wine. It was also shown that Hicks was very friendly with Mrs. Leslie when the trial took place.

[5] The error complained of in connection with the trial of the case consists in the refusal of the court to admit certain evidence by which defendant offered to prove by one witness that Allen (the man who was on the back seat with defendant Goulding, Mr. Griffin, and the two women) within a few days after the robbery had tried to sell a ladies' hunting-case gold watch to the witness, and by another witness that Allen had procured a loan from the witness on a watch of that description. In the circumstances the evidence of such facts would have had a tendency to establish either that Allen alone committed the robbery or that the robbery was the result of a conspiracy and that Allen was a confederate of or co-conspirator with Goulding. Assuming that the jury might have taken a view that Allen was the person who perpetrated the crime, the offered evidence would

have been very material to Goulding's defense; hence it should have been received. But in view of all the evidence in the case, it is apparent that not only was Goulding's guilt shown beyond a reasonable doubt, but that the evidence very nearly approached a demonstration of his guilt. Assuming that there was nothing in the conduct or demeanor of any of the witnesses testifying for the people which would have militated against their good intentions and their desire to tell the truth, it would seem entirely improbable that any fair-minded jury, after listening to all the evidence, including therein the testimony of the witnesses called for the purpose of testifying to the two transactions in question, could have had a reasonable doubt, founded upon either the evidence or the lack of evidence in the case, as to the guilt of the defendant. Section 4½ of article VI of the California constitution provides that "no judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, . . . or rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." The court is of the opinion that neither the rejection of the evidence referred to, nor the giving of any instruction nor the refusal to give any instruction of which complaint is made by appellant and upon which appellant bases his appeal herein, resulted in a miscarriage of justice.

The judgment of conviction and the order denying the motion for new trial are affirmed.

Conrey, P. J., and James, J., concurred.