FRANK AMBROSE V. STATE OF NEBRASKA.

FILED FEBRUARY 13, 1924. No. 23383.

1. **Criminal Law:** VARIANCE: REVIEW. Where complaint is made in a criminal prosecution that there is a variance between the complaint which was filed at the preliminary hearing and the information on which defendant was tried, we are precluded from an examination and a decision of the question unless the complaint is made a part of the record.

2. ———: PRELIMINARY EXAMINATION. It is elementary that, where it is claimed in a criminal prosecution that no preliminary examination has been had, the question should be raised by a plea in abatement.

3. ———: INCOMPETENT EVIDENCE. In the absence of objection by a defendant in a criminal prosecution, reversible error cannot ordinarily be predicated upon the introduction of incompetent evidence, where the court, when its attention was directed thereto, promptly sustained a motion to strike the objectionable matter from the record and cautioned the jury that such matter must not be considered by it in arriving at its verdict.

ERROR to the district court for Saline county: RALPH D. BROWN, JUDGE. *Affirmed.*

*Robert R. Hastings* and *Bartos & Bartos,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Mason Wheeler, contra.*

Heard before MORRISSEY, C. J., ROSE, GOOD and DEAN, JJ., SHEPHERD, District Judge.

DEAN, J.

Defendant was convicted of arson in Saline county under section 9591, Comp. St. 1922, and was sentenced to serve an indeterminate sentence in the penitentiary of from 1 to 20 years. Alleging error he brings the case here for review.

For a few months prior to December, 1922, defendant conducted a shoe-repair shop at Crete in a small two-room frame building where he lived and also carried on his trade. On the morning of December 1, shortly after 5 o'clock, a

fire was discovered in defendant's rooms. Four or five witnesses testified that while the fire was in progress bundles of burning rags and burning papers were found scattered about the rooms, and that they detected an odor of burning kerosene. Some of the charred rags were in evidence and at the time of the trial it appears that they still retained the same odor.

Two druggists testified that on the day before the fire defendant purchased two gallons of floor oil at their respective stores which he told them was to be used to oil his floors. The same witnesses testified that defendant bought more oil than was necessary for his floor space. From the evidence of one or both of the druggists it appears that burning floor oil emits only a slight odor and that it bears no similarity to the pungent odor of burning kerosene. Another witness testified that he saw pools of oil on defendant's floor the night before the fire.

State Fire Warden Hartford, by whom the house was examined two or three days after the fire, testified that he found charred rags on top of an oil stove, and that the floor was burned where the burned rags were found, and that he detected the odor of kerosene on the rags. He further testified that he found a 5-gallon can containing about 1½ gallons of kerosene in one of the defendant's rooms.

Mr. Oborne is a baker whose place of business is in a frame building about 10 or 12 feet from defendant's shoe shop. He testified that a few days before the fire defendant came to his bakery, and, after introducing the subject of fires generally, told him that he, defendant, had no cause to worry about fires because he had insurance and was safe if he burned out; that defendant then advised him to take out more insurance, and he did so on defendant's advice because defendant said that they were "going to go up in smoke." It appears that defendant had two insurance policies, namely, one for $800 on stock and shoe-repair machinery and one for $200 on household goods.

Defendant is 49 years of age. He has a child about a year old that for about four months had been kept for him in

the daytime at the Friml home. They were his neighbors. At night he kept the child at his own place. But the evening before the fire he took the child to Mrs. Friml's home and asked her to keep it overnight. At the trial he explained, that, having just oiled his floor, he did not want to keep the child there lest the odor of oil should cause it to become ill. It appears that, with perhaps one or two exceptions, that was the only time that the child was elsewhere than at defendant's place overnight during the time he lived at Crete.

Defendant denied that he knew anything about the origin of the fire. He testified that, shortly before 5 o'clock on the morning of December 1, 1922, he was aroused from his sleep by a knock at his door; that he called out, "Who's there?" and a voice answered that his baby was sick; that he did not recognize the voice but did not think it was the voice of his wife; that, without making further inquiry of his caller, he immediately got up and went to the home where the child was, and Mrs. Friml told him the child was not ill, and that some one must be fooling him. In respect of the papers, which were found scattered about on the floor, defendant explained that they were placed there because he did not want to get the oil on his shoes.

It is argued that there is a variance between the complaint which was filed at the preliminary hearing and the information on which defendant was tried, and that defendant therefore had no preliminary examination. But we are precluded from an examination of that question because the complaint to which exception was taken is not in the record. It is elementary that, where it is claimed in a criminal prosecution that no preliminary examination has been had, the question should be raised by a plea in abatement. *Cowan v. State*, 22 Neb. 519. It is also argued that the court erred in giving the eleventh instruction on its own motion. The instruction complained of has to do with circumstantial evidence, and need not be reproduced here, inasmuch as it is a verbatim copy of an instruction which is set out and approved in *Smith v. State*, 61 Neb. 296, 305, and followed in *Lamb v. State*, 69 Neb. 212. Reversible

error cannot be predicated on this assignment of alleged error.

Complaint is also made that the state interrogated defendant to some extent in respect of a former fire in his place of business which occurred about a month before the fire which is involved in the present case. The examination was permitted to go on, without objection, until finally defendant moved to strike out the objectionable matter. The court promptly sustained the motion and it was stricken from the record and the jury cautioned not to consider it. In the absence of objection by a defendant in a criminal prosecution, reversible error cannot ordinarily be predicated upon the introduction of incompetent evidence, where the court, when its attention was directed thereto, promptly sustained a motion to strike the objectionable matter from the record and cautioned the jury that such matter must not be considered by it in arriving at its verdict.

From a review of the record, we conclude that there is sufficient competent evidence to support the verdict. Reversible error does not appear.

The judgment is

AFFIRMED.