NELLIE WEST ET AL. V. STATE OF NEBRASKA.

FILED APRIL 25, 1930.   No. 27300.

*N. M. York* and *Ted R. Frogge*, for plaintiffs in error.

*C. A. Sorensen, Attorney General,* and *Homer L. Kyle,* contra.

HEARD before GOSS, C. J., ROSE, DEAN, GOOD, THOMPSON and EBERLY, JJ., and LIGHTNER, District Judge.

ROSE, J.

In a prosecution by the state in the district court for Gosper county Nellie West and William E. Lacey, defendants, were convicted of the larceny of an automobile valued at $400. For that felony Nellie West was sentenced to serve a term of one year in the state reformatory for women at York and William E. Lacey was sentenced to serve a term of one year in the state penitentiary at Lancaster. As plaintiffs in error the defendants named have presented for review the record of their conviction.

The controlling question for determination is the sufficiency of the evidence to sustain the conviction. There was a plea of not guilty, which included the defense that Nellie West claimed in good faith to be the owner of the automobile by betrothal gift and took it under advice of counsel. It is contended on behalf of defendants that evidence of the criminal intent essential to a conviction for grand larceny is entirely wanting and that consequently the sentences should be reversed and the prosecution dismissed.

It is settled law that the felonious intent to deprive a person of his property is an essential element of grand larceny. *Waidley v. State,* 34 Neb. 250; *Dobson v. State,* 61 Neb. 584; *Jones v. State,* 101 Neb. 847; *McIntosh v. State,*

105 Neb. 328. To sustain a conviction, therefore, the felonious intent must be proved beyond a reasonable doubt. *Hayward v. State*, 97 Neb. 9. Where felonious intent is inferable alone from circumstances, they must be such as to exclude every reasonable hypothesis on that issue except the guilt of accused. *Smith v. State*, 61 Neb. 296; *Lamb v. State*, 69 Neb. 212; *Lillie v. State*, 72 Neb. 228; *Lowe v. State*, 110 Neb. 325. In this particular is the evidence in the present instance sufficient to sustain the conviction?

There was no dispute about the taking of the automobile by Nellie West. She took it, claiming to be the owner. The information contained the charge that the automobile, a Chevrolet sedan definitely described, was the personal property of J. C. Utterback, special administrator of the estate of John C. Sanders, deceased, and that defendants, on or about March 4, 1929, in Gosper county, Nebraska, "did then and there unlawfully and feloniously take, steal, carry and drive" it away "with intent thereby to defraud the owner." Sanders was a bachelor and resided on a farm a few miles from Holbrook, Gosper county. He asked where he could get a housekeeper, and in reply William E. Lacey, to whom the inquiry had been directed, recommended Nellie West, a divorced woman who had two small children. She was employed by Sanders and entered upon her duties in his home June 17, 1928, where she resided with her children until Saturday, March 2, 1929. On that date Sanders committed suicide in a room in his house. The county attorney, who was also coroner, held an inquest the same day, appointed custodians of decedent's property, immediately placed them in charge of it and procured the appointment of Utterback as special administrator. Appraisers were on the premises Sunday, March 3, 1929, appraised the property March 4, 1929, and listed the Chevrolet sedan as part of decedent's estate. Nellie West took the automobile out of the garage Monday, March 4, 1929, and drove it away. March 5, 1929, was the date of the funeral. Defendants were present at the services.

In connection with the facts outlined, the evidence adduced by the state on the issue of the felonious intent essential to a conviction may be summarized as follows: Sanders bought the automobile June 29, 1928, and paid for it; had the bill of sale and an insurance policy drawn in his own name; procured for himself the necessary license and paid the fee therefor; provided a garage near his house where the car was kept when not in use; carried a set of the Chevrolet keys in his pocket, where they were found on his person after his death; drove the car himself on two or three different occasions between the date of purchase, June 29, 1928, and the date of his death, March 2, 1929; never transferred the title by bill of sale or by other instrument in writing; once referred to the car as his own and at another time indicated a purpose to sell it. The record also contains evidence tending to prove the following facts, in substance: Nellie West was present when the inquest was held, when the custodians and the appraisers were appointed, and when property of decedent was listed, but made no claim to ownership of the automobile. She said she hated to see the car sold and would buy it, if she had the money. Promptly after the appointment of Utterback as special administrator he told Nellie West her services were no longer needed. She expressed a purpose to go to Oxford, in Harlan county, and he told her not to take the car.

Whether the circumstantial evidence is sufficient to exclude every reasonable hypothesis except the felonious intent of Nellie West to steal the automobile depends upon all the circumstances in connection with established facts. She testified positively that she was engaged to be married to John C. Sanders and that he gave her the car as an engagement gift. With her two small children his home had been her home for nine months. Finding herself suddenly in an appalling situation there March 2, 1929, she reported the tragedy by telephone to Oxford, where Lacey, her friend, resided with his wife and four children. He met Nellie West at the Sanders home the next day, advised her

to consult an attorney about her claim to the car, and recommended a capable lawyer in good standing at Red Cloud. She pursued that course. Her testimony, corroborated in many particulars by other witnesses, tends to prove the following facts: She and her children spent Sunday night, March 3, 1929, at the home of the Laceys in Oxford. In Lacey's car she went to Red Cloud the next morning, March 4, 1929; called at the office of the attorney recommended; told him the car was given to her by Sanders as an engagement gift, but did not know there would be trouble with the estate over it; said it was unlocked in the Sanders garage where she had placed it and that she had a set of keys for it; asked if she could take it; was told that it would be all right to do so, to store it and to notify the administrator; returned to Oxford and went from there to the Sanders place the same afternoon, Monday, March 4, 1929, backed the car out of the garage and loaded it with her personal belongings; drove it in the evening to Orleans with her children and one of Lacey's daughters; stored it for the night in a garage there; went back to Oxford with Lacey's son, Paul, and spent the night with the Lacey family; took the car to Red Cloud the next morning, March 5, 1929, and stored it in a garage there; again conferred with her attorney, and, acting on his advice, wrote and mailed to the administrator a letter stating that the car had been given to her by Sanders and asking him to write to her attorney, naming him, if he wanted to know more about it. The letter is in the record and is dated and postmarked at Red Cloud, March 6, 1929.

The attorney consulted by defendants testified as a witness and said that they had called at his office in Red Cloud in the morning on two different occasions and consulted him about the car. Asked to give the substance of the conversation with them, he testified, referring to Nellie West:

"As I recall, the title of this car was in dispute; that is, she claimed it. And as I remember she told me that this man's brother, or the administrator, I have forgotten which, was claiming it. And she told me how long she had

lived here—a few months in this county—and had nothing, as I remember, and could not put up a bond—a bond of replevin. And I said then, 'If I were you, I would take the car to Orleans, over in Harlan county, and make the other side replevin it. They will have to put up a bond, and if you are a stranger up in that county you would have more of a chance in Harlan county than you would up there.' And I think that is about all I can remember. I said, 'I would not want to go away up to Elwood to defend your title to that car. If you want to bring it to Orleans, and, after it is brought there, then tell the administrator or brother where it is, and, if he claims it or wants it, he can replevin it, and the matter can be settled in court.' "

The garage-keeper at Red Cloud, a witness for the state, testified in substance on direct and cross-examination: Defendants delivered a Chevrolet sedan to him for storage March 5, 1929. They said it might be there a week or longer; were having a little trouble with it; had been advised by the attorney to leave it there until they got the trouble settled; were notifying the estate. The car remained there under that arrangement until the sheriff took it away.

The Chevrolet dealer at Holbrook, another witness for the state, testified that Nellie West called alone at his place of business and negotiated for the car; that the deal was consummated with Sanders at his farm when she was present and that she did most of the talking; that when delivered two sets of keys were in the car; that Sanders and Nellie West drove it away, the latter at the wheel.

A Buick salesman testified that Nellie West negotiated with him at Arapahoe for an exchange of the Chevrolet sedan and a payment in money for a Buick car about a week before the death of Sanders; that the negotiations were continued the next day with her and Sanders at the latter's house; that the deal was not closed, but that Sanders, in presence of witness, while the exchange of cars was under consideration, said to Nellie West:

"I have bought you one car, and I have bought you a

radio, and I paid for having your teeth fixed. Now, if I do this, you will do what I want."

The principal argument by counsel for the state on the sufficiency of the evidence to prove felonious intent was directed to the proposition that she did not claim it when the custodians, the administrator and the appraisers were present in the performance of their duties. The inference of hostility toward her is unavoidable. The home of herself and children had been lost. After the death of Sanders the officers were promptly and continuously in charge of the premises and the property of decedent. The car she had been driving for months was in his garage. She was ordered not to take it. She was peremptorily told that her services were no longer needed. The administrator went through her trunk in search of papers belonging to the estate, but found none. The dead body of the man who had provided a home for herself and her children was still in the house that had sheltered them. There is nothing in the record to indicate that any relative of his or any officer who kept a vigil there spoke a kind word to her. Before she consulted her attorney there was nothing to imply that she thought she could safely rely on an oral gift to establish her title to the car. She was present when it was purchased and knew the bill of sale was issued to Sanders. She also knew that her claim rested in parol and that the title of Sanders was evidenced by a written instrument. The motive that prompted her to consult an attorney would naturally make her shrink from asserting her claim under the circumstances before receiving legal advice. This would account also for the statement that she hated to see the car sold and would buy it if she had the money. When all the circumstances are impartially considered, the inference of good faith on her part is at least as strong as the inference of felonious intent. The prosecution did not meet the requirements of the criminal law. Grand larceny was not proved beyond a reasonable doubt. The circumstantial evidence does not exclude every reasonable hypothesis except the felonious intent of Nellie West. Both de-

fendants should have been acquitted. The county attorney informed the jury that he had adduced all the available evidence. The case, therefore, will not be remanded for a new trial. The judgment of the district court is reversed and the prosecution dismissed at the costs of Gosper county in both courts.

REVERSED AND DISMISSED.

Good, J., dissents.