HARLEY H. FETTY v. STATE OF NEBRASKA.

FILED MARCH 12, 1929.  No. 26589.

*J. E. Willits,* for plaintiff in error.

*C. A. Sorensen, Attorney General,* and *Clifford L. Rein, contra.*

Heard before GOSS, C. J., GOOD, THOMPSON, EBERLY and DAY, JJ., and REDICK and SHEPHERD, District Judges.

GOSS, C. J.

Defendant was convicted of an intent to extort money by means of written communication threatening the life of Ralph E. Hunter.  From a judgment sentencing defendant to the penitentiary for an indeterminate period of not less than 18 months nor more than three years, the defendant brings error proceedings.

The defendant assigns many errors.  Without stating them in full here, each assignment that seems to us to merit discussion will be mentioned as it is reached.

The court refused to quash the information, which was moved by the defendant on these grounds:  Because the written communication shows on its face that (1) there was no place named for Hunter to leave the money; (2) that it is without meaning and too indefinite to extort money from any one; that (3) it was not verified nor its author disclosed; and (4) that the defendant is not mentioned or disclosed or connected with the communication.  The unsigned communication is set forth in the information in these words:

"Mr. R. E. Hunter:

"You get two thousand dollars in small bills place in

small tin can with tight lid. in a few days you will be told wher to leave it. Burn this when you read it dont mention this to one one We mean what we say if you fail your life will be the penalty think it over. We will notify you in a few days wher to leave the money Burn this at once Remember you will be wached. You will be perfectly safe if you. Do as we have said"

The information alleges that the letter was mailed to Ralph E. Hunter, Inavale, Nebraska, in an envelope thus addressed, and was so sent by said Harley H. Fetty with the intent, etc.

It is perfectly apparent that the information charges the sending of the letter by the defendant, that the letter threatens death unless Hunter comply with its request to get and place $2,000 in small bills in a tin can with a tight lid, that he will be watched and will be told where to leave the can. The statute denounces a threat, "either verbally or by written or printed communication, * * * to do any injury to the person or property of another, with intent to extort money." Comp. St. 1922, sec. 9579. The information meets every call of the statute and answers almost categorically the objections contained in the motion to quash.

The defendant moved to quash the regular panel of jurors because not selected at least 15 days before the opening of the term, as required by section 9073, Comp. St. 1922. The county board selected the persons for the jury on April 3, 1928. The April term began April 16, 1928; so, only 13 days intervened between the time the persons were selected by the county board to serve as jurors and the first day of the term. Section 9073 provides: "The county board of the county shall, at least fifteen days before the first day of the session of the court, meet, and select sixty persons possessing the qualifications prescribed," etc. Defendant claims this is mandatory as to the elapsed time between the time of selection and the first session of the term. He cites *Kronberg v. State,* 114 Neb. 393, *Nelson v. State,* 115 Neb. 26, and *Davis v. State,* 31 Neb. 247, in

support of this proposition. The *Kronberg* case held that it was mandatory to draw by lot 24 names promiscuously from the box containing the 60 names rather than to draw 24 names out of the 60 by precincts consciously and intentionally as the sheriff and clerk did. The *Nelson* case held that officers who are interested as prosecuting witnesses or are interested in the results of litigation are disqualified from participating in the selection of the list of 60 names from which the jury panel is to be drawn. In the *Kronberg* case it was said: "It is not every irregularity in drawing names that will prejudice the rights of defendant in a criminal prosecution, but in a material respect a radical departure from a mandatory statute should not be sanctioned." *Kronberg v. State*, 114 Neb. 393, 396.

We do not wish to be understood as deciding that section 9073 is not in any case mandatory as to the time when the 60 names of persons to be called as jurors should be selected and certified to the district court, but we think the circumstances in this case do not show that the defendant was prejudiced by the delay of the county board to convene and to select the list 13 days instead of 15 days before the first session of the term of court. The evident purpose of fixing that time is that the 24 names for the panel may be drawn by the proper officers and that those drawn for the jury panel may have timely notice of their call to jury service. The law does not concern itself in favor of litigants and their counsel who may desire to know in advance of trial the personnel of juries. Indeed, the modern trend is against such a disclosure. This is indicated by the act providing for a jury commissioner and the selection of jurors in counties of 100,000 population or more. Comp. St. 1922, secs. 9095-9110. Section 9105 provides a severe penalty, ranging from a fine of $100 up to three years in the penitentiary, for disclosure of the names of jurors called unless authorized by an order of court.

Defendant complains that his application for inspection and a copy of the photograph of the letter on which the

information was based was overruled and inspection delayed to his prejudice. On April 17 defendant asked a delay of three to ten days to prepare to attack the information. He had had notice ever since his preliminary hearing to employ counsel and prepare and the court, remarking his delay, gave him until April 19 to prepare for trial. His counsel seems to think, and so expressed himself to the trial court, that there could be no case set for trial until after "the issues were made up." After the motions attacking the information were disposed of, the court put the defendant upon trial some time on April 19, 1928. Defendant asked for the letter and photographic copies of it or to be allowed to photograph it. There was some delay in securing these, but defendant had and used an expert as a witness who expressed his "honest conclusion and opinion" that the letter was not written by the same hand that wrote other exhibits conceded to be written by defendant. Rulings on continuances and delays in furnishing papers for inspection in a trial are largely within the control and discretion of the trial court. We do not find that there was such abuse of that discretion that, in the circumstances shown by the record, the rights of the defendant have been prejudiced.

In instructing the jury on the elements necessary to be proved beyond a reasonable doubt, the court, in instruction No. 3, when referring to the letter which the information charged the defendant sent by mail, said: "That the defendant, on or about the 29th day of January, sent or caused to be sent the letter set out in the information." The words "or caused to be sent" are claimed to be erroneous. The information charged, and the proofs showed, that the letter was sent by United States mail. The defendant cites *Bundy v. State*, 114 Neb. 121, where, in a kidnapping case, the instructions by the court added the word "conceal" to the word "detain," which was the only one of the two words charged in the information. This was held to be error.

The same instruction described the guilty intent as "with

the intent and for the purpose of extorting or obtaining money or other valuable consideration from the said Hunter," whereas the information charges the intent to extort $2,000 and does not mention the "other valuable consideration." It would have been better had the court confined the language of the instruction to that of the information in both instances complained of.

Error is predicated upon the refusal of the court to allow Wallace O. Shane, expert handwriting witness for the state, to be cross-examined as to his fees for his expert testimony. We think the court should have allowed this question to be answered by the witness for what effect it would have, if any, on the jury, and to allow the jury to know his pecuniary interest in the case and to weigh his credibility as to his other testimony in the light of that influence. It may be said, however, that the witness had already answered that he had one charge that he made to all and had had for a number of years. In *Olive v. State*, 11 Neb. 1, Judge Lake held that the court erred in refusing to allow a witness on cross-examination to be examined as to his interest in a damage suit brought by survivors of the deceased whose murder was the subject of the case on trial. In *Blenkiron v. State*, 40 Neb. 11, it was held: "In the cross-examination of a witness it is competent to interrogate him in regard to any interest, pecuniary or otherwise, and the extent of such interest he may have in the result of the case in which he is testifying, as affecting his credibility." 40 Cyc. 2671, citing numerous cases, that— "A witness may be interrogated as to payments to him by one of the parties, in excess of his legal fees, or offers or promises of such payment." The testimony of Mr. Shane was a very material element in connecting the defendant with the handwriting in the letter set out in the information. The jury should not have been prevented from knowing what fees and expenses he was to receive. The answer may not have affected them at all in favor of defendant, but that is not a matter upon which the trial court, or we as a reviewing court, have a right to speculate. In ex-

cluding the evidence we think the court erred. In another trial the things defendant has assigned as errors, and we have commented on, are not likely to occur again.

For the reasons stated in this opinion, the judgment of the district court is reversed and the cause is remanded for a new trial.

REVERSED.