DAVE YOUNG V. STATE OF NEBRASKA.

276 N. W. 387

FILED DECEMBER 15, 1937. No. 30177.

*J. J. Brown,* for plaintiff in error.

*Richard C. Hunter,* Attorney General, *Bert L. Overcash, Francis V. Robinson* and *J. H. Falloon,* contra.

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ., and ELDRED, District Judge.

EBERLY, J.

Plaintiff in error, Dave Young (hereinafter referred to as the defendant), was convicted in the district court for Richardson county of the offense of breaking and entering with intent to steal, and sentenced to one year in the state penitentiary at hard labor. Motion for a new trial was overruled, and the defendant prosecutes error to this court.

The state's evidence follows: Harold Noah, 16 years old, lived next door north of and in the same block with the Ada Kenn home. He testified that on the night of July 17, 1936, he was sleeping on the south porch of his home, about even with and directly north of the Kenn home, a distance of 50 or 60 feet, when he was awakened by the barking of a dog, and saw a light in the west window on the north side in the one bedroom of the Kenn home; that he called to his mother, who in turn called the police; that he could see quite plainly, was watching the house and did not see any one going in or coming out of the house after he first saw the light and saw the officers go to the house; that from the time he first saw the light until the officers arrived about 15 minutes elapsed. On cross-examination he testified that he was standing

near his mother for a certain interval of time and did not know whether he could quite see the Kenn house during that time; that one of the officers went to the rear and the other to the front door of the Kenn house.

David McCage, night officer, testified that he arrived at the Kenn home between 1:30 and 2 o'clock on the night in question, and, with officer Asendorff, went directly to the house, Asendorff to the rear of the house, which was on the west side towards the alley, and witness to the front, and could see a light in the northwest window; that he went into the house from the east and finally turned into one door in the kitchen, flashing his light, and met Ralph Asendorff coming out; that there was no light in the kitchen, but there was a light in the bedroom; that the bedroom door was open; that defendant came through the doorway, and that neither the defendant nor Ralph Asendorff said anything; that Ralph Asendorff had a hammer in his overalls and a pair of pliers; that defendant had a padlock on his person. The witness went back to the house later, found a crowbar in the bedroom standing by the dresser against the wall; witness noticed that one of the dresser drawers was open, and that a lady's purse on top of the dresser was open. The witness stated that on the previous afternoon he was at the house when they took Ada Kenn to the state hospital, and that the house was then in an orderly condition. On cross-examination he testified to a growth of weeds and brush on the premises, and that the gates were wired, the house being surrounded by a wire fence. This testimony was corroborated by Claude Asendorff, also a police officer and the father of Ralph Asendorff. It was shown that the defendant was dressed in an undershirt, overalls and without shoes. The testimony of Ralph Ramsey, deputy sheriff, disclosed that a search was made of the two men and that pliers, a hammer and a padlock were found. Further evidence in behalf of the state disclosed that on the afternoon that Ada Kenn was taken from her home the doors were nailed shut and the house locked;

also, there was evidence that the doors had been pried open by a crowbar or a pinch bar.

The defendant and Ralph Asendorff testified substantially to the following facts: Defendant, Ralph Asendorff and another party were sleeping in the yard on the defendant's premises, which was across the street from the Kenn home. Asendorff had been awakened by the barking of a dog, and he in turn had awakened the defendant, but did not disturb the third party. They noticed a light, and then went to the Kenn house. The rear door of the house was open and they entered the house through the front door, which was also open. They were there but a short time when the officers arrived. They were taken to the station, searched and placed in jail. The record shows some conversation had between the defendant, Ralph Asendorff and the officers, to the effect that defendant requested the officers to release him and stated that nothing would be said about it. The testimony of the officers was to the effect that no explanation was given, and that a sufficient length of time elapsed in which the defendant could have explained the reason for his being in the Kenn house. The explanation given at the trial was that the defendant and Asendorff had gone to the Kenn house in order to protect the property of Ada Kenn and to see who was there. It is further contended by defendant that the surrounding circumstances, viz., the weeds and accessibility to the basement, providing a place for marauders to hide, the testimony of one witness that he saw two men running down the alley at 2 o'clock on the night in question, and other circumstances all indicated that other persons had been in the house besides the defendant and Ralph Asendorff. Defendant also introduced witnesses who testified as to his previous good reputation. There was evidence of a padlock, similar to the one taken from the defendant, having been in the Kenn home. Defendant's explanation of his possession of the padlock was that he had purchased it at Montgomery Ward's store.

The fact that defendant, having lived in the community for nearly two months, knew that Ada Kenn had been taken to the state hospital; the fact that a hammer had been borrowed from defendant's premises by the officers who nailed shut the doors of the Kenn house; that a dresser drawer in the bedroom was open and a lady's open purse found on the dresser, while the house had been in an orderly condition when Ada Kenn was taken away; the failure of defendant to make an explanation, until the time of his trial, of his presence in the house; the padlock found on defendant which, although not positively identified as the one found in the Kenn home, was similar, in all respects, to the one missing from that house; the fact that the doors in the house were opened with a crowbar or pinch bar, even though the pinch bar was not introduced in evidence as belonging to this defendant or to Ralph Asendorff, but nevertheless a circumstance; the length of time that defendant and Asendorff were in the Kenn house, although the exact length of time was not fixed,—all these facts and circumstances are proper to be weighed against the evidence of the defendant in his explanation of his presence in the Kenn home.

Defendant contends that the verdict is contrary to law and is not sustained by the evidence, and cites section 28-538, Comp. St. 1929, and *Hayward v. State,* 97 Neb. 9, 149 N. W. 105. In the *Hayward* case, in the body of the opinion at page 11, it was said: "It is fundamental that, in order to prove burglary, there must be evidence tending to prove the unlawful breaking and entry, and that such unlawful acts were with felonious intent. * * * The act of breaking may be shown by proof, either direct or circumstantial. * * * The breaking must be accompanied by an unlawful intent; if not, it is not burglary. This intent may also be proved by direct or circumstantial evidence. * * * These rules are fundamental and well understood, are included in the statute," etc. It is for the jury to say, under proper instructions, whether or not

the defendant was guilty as charged in the information beyond a reasonable doubt.

The defendant contends that he was not given a fair trial on account of the misconduct of juror W. L. McCoy, who, on his *voir dire* examination, concealed the fact that he had been present in the courtroom during the trial of Ralph Asendorff, who was informed against jointly with the defendant, and whose trial was had on November 18, 1936, while the trial of this defendant was had on April 13, 1937. The juror was not challenged on this point on his *voir dire;* neither was complaint made in the first motion for a new trial filed on April 16, 1937. In the second motion for a new trial, filed April 30, 1937, the objection as to juror McCoy was first raised and supported by affidavits by members of defendant's family and one other, to the effect that juror McCoy was present at the trial of Ralph Asendorff during most of the time. Two affidavits by juror McCoy stated that he heard a part of the arguments in said case, but not sufficient for him to form an opinion. On his *voir dire* he stated that there was no reason why he would not make a fair and impartial juror and try the case on the evidence and instructions of the court.

It is obvious from the record that the objection to juror McCoy, raised after the trial and for the first time in a second motion for a new trial, clearly out of time, is not well taken and cannot be considered, for the reason that there is no showing of newly discovered evidence, material for defendant's cause, which he could not, with reasonable diligence, have discovered and produced at the trial. Comp. St. 1929, sec. 29-2103, as amended by chapter 65, Laws 1935.

"The general rule as to waiver of lack of qualification of a juror appears to be that qualifications, the lack of which does not affect the ability of the juror to render a fair and impartial verdict, are waived by failure to object to such juror till after verdict. And so it is that failure to challenge a juror for cause as to his competency, and

to examine him or other witnesses in support of the challenge, is a waiver, even though the fact of incompetency is not known to the party until after verdict." 16 R. C. L. 284, sec. 100. See *Seaton v. State,* 109 Neb. 828, 192 N. W. 501; *Hickey v. State,* 12 Neb. 490, 11 N. W. 744; *Ogden v. State,* 13 Neb. 436, 14 N. W. 165; *Turley·v. State,* 74 Neb. 471, 104 N. W. 934. To hold otherwise would be to establish a precedent that a defendant, under similar circumstances, might await the decision of the court and jury as to his guilt or innocence, and subsequently raise a question as to the qualifications of a juror to sit.

The county board, 12 days before the beginning of the term of court, selected and certified to the clerk of the district court the names of 80 persons, qualified to sit as jurors at that term of court. Objection was made by defendant's counsel in that these names had not been selected and certified to the clerk at least 15 days before the beginning of the term, as provided in section 20-1603, Comp. St. 1929, as amended by chapter 36, Laws 1931. The court sustained the objection, quashed the entire panel, and called a new jury from the balance of the 80 names submitted to the county board.

In the case of *Fetty v. State,* 118 Neb. 169, 223 N. W. 955, where a jury were selected 13, instead of 15, days before the first session of the term of court, it was held that there was no error in proceeding to trial with the jurors selected. In the body of the opinion it was said that the purpose of this provision of the statute was to give the officers and those drawn for the jury panel "timely notice of their call to jury service. The law does not concern itself in favor of litigants and their counsel who may desire to know in advance of trial the personnel of juries. Indeed, the modern trend is against such a disclosure." The defendant at no time claimed any prejudice by reason of the selection of the jury in the instant case, and raised no objection to it in his original motion for a new trial.

Defendant contends that the county attorney was guilty of misconduct in examining certain witnesses. No objection was interposed to certain questions for which defendant claims misconduct on the part of the county attorney. In asking other questions as to whether or not Ralph Asendorff had been previously convicted of a felony, instead of stating the questions in the proper way, the county attorney designated the offenses with which the said Ralph Asendorff had been convicted, to which an objection was made as having been already asked and answered. Subsequently, an objection was made to the questions as incompetent, irrelevant and immaterial, and the court, in instruction No. 10, informed the jury that such testimony went only to the credibility of the witness and was to be considered by the jury for no other purpose. While it is true that the county attorney did not properly ask the questions, we think there was no prejudicial error in this respect, especially where the court instructed the jury as to the effect of such evidence. The defendant further complains of misconduct on the part of the county attorney in his argument to the jury. While the record discloses the objection, there is nothing in the record as to what the county attorney did tell the jury about Ralph Asendorff, or as to his previous conviction for any offense. In order for a reviewing court to determine misconduct on the part of counsel, in this respect, it would be necessary to have the remarks of counsel made a part of the record, so that the court may be informed in this regard.

For the reasons stated in this opinion, the judgment of the district court is

AFFIRMED.