KENNETH KITTS, PLAINTIFF IN ERROR, V. STATE OF NEBRASKA, DEFENDANT IN ERROR.
46 N. W. 2d 158

Filed February 13, 1951. No. 32860.

Bernard J. Boyle and Hugh J. Boyle, for plaintiff in error.

Clarence S. Beck, Attorney General, and William T. Gleeson, for defendant in error.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

In a three-count information, defendant was respectively charged with: (1) Breaking and entering; (2) unlawful possession of instruments or tools with intent feloniously to break and enter; and (3) that he was an habitual criminal.

After a plea of not guilty he was tried to a jury upon the first two counts and found guilty upon each as charged. His motion for new trial was overruled, and a hearing was had by the court upon count three, in conformity with sections 29-2221 and 29-2222, R. R. S. 1943. In view of the record and undisputed fact that defendant had been convicted of felonies upon four previous

occasions, two of which were for breaking and entering, the trial court sentenced him to serve 12 years in the Nebraska State Penitentiary under count one, and for a like period under count two, such sentences to run concurrently and not consecutively.

Therefrom defendant prosecuted error to this court: (1) Challenging sufficiency of the evidence to sustain his conviction upon either count one or two; (2) contending that the trial court erred prejudicially in overruling his challenge for cause of a juror required to serve because defendant's peremptory challenges had all been exhausted; (3) erred prejudicially in overruling defendant's objection to the reading of only a portion of the testimony given by a witness at a former trial of the same case, who was since deceased; and (4) that the publication of alleged false and prejudicial newspaper articles prior to and during the trial prevented defendant from having a fair trial. We conclude that defendant's contentions have no merit.

Upon the conclusion of the State's case-in-chief, and again at conclusion of all the evidence, defendant moved to instruct the jury to return a verdict of not guilty, or in the alternative to discharge the jury and exonerate defendant upon both counts, because the evidence as a matter of law was insufficient to sustain the material allegations of the information. Such motions were properly overruled by the trial court.

The sufficiency of the evidence must be determined in the light of well-established rules of law. In that regard, the material elements of the crime of breaking and entering with felonious intent, as defined by section 28-532, R. R. S. 1943, may be proved by direct or circumstantial evidence. Young v. State, 133 Neb. 644, 276 N. W. 387; Ayres v. State, 138 Neb. 604, 294 N. W. 392.

Likewise, the material elements of the crime of possession, custody, or control of instruments or tools with intent feloniously to break and enter, as defined by

section 28-534, R. R. S. 1943, may be proved by direct or circumstantial evidence. O'Neill v. State, 105 Neb. 824, 182 N. W. 503; State v. Furlong, 216 Iowa 428, 249 N. W. 132.

Concededly, as held in Morgan v. State, 51 Neb. 672, 71 N. W. 788: "The test by which to determine the sufficiency of circumstantial evidence in a criminal prosecution, is whether the facts and circumstances tending to connect the accused with the crime charged are of such conclusive nature as to exclude to a moral certainty every rational hypothesis except that of his guilt.

"It is the province of the jury to determine the circumstances surrounding, and which shed light upon, the alleged crime; and if, assuming as proved the facts which the evidence tends to establish, they can be accounted for upon no rational theory which does not include the guilt of the accused, the proof cannot, as a matter of law, be said to have failed. (Casey v. State, 20 Neb., 138.)" See, also, Maher v. State, 144 Neb. 463, 13 N. W. 2d 641, 323 U. S. 757, 89 L. Ed. 606, 65 S. Ct. 91.

It should be borne in mind, however, that: "The unsupported testimony of the accused in a criminal case, which the jury do not believe, cannot be said to furnish an hypothesis consistent with the innocence of the accused." Binfield v. State, 15 Neb. 484, 19 N. W. 607. See, also, Carleton v. State, 43 Neb. 373, 61 N. W. 699.

Referring to other cited cases, it is stated in Watson v. State, 141 Neb. 23, 2 N. W. 2d 589: "They do not, however, change the rule, long followed and stated by this court in Vinciquerra v. State, 127 Neb. 541, 256 N. W. 78, as follows: 'To justify conviction on circumstantial evidence, it is necessary that the facts and circumstances essential to the conclusion sought must be proved by competent evidence beyond a reasonable doubt, and, when taken together or as a whole, must be of such a character as to be consistent with each other, and with the hypothesis sought to be established thereby,

and inconsistent with any reasonable hypothesis of innocence.'

" 'Where in a criminal case the evidence is circumstantial, the circumstances established, must, to warrant a conviction, be such as to exclude every reasonable hypothesis except that of the defendant's guilt. But this rule merely requires the exclusion of such hypotheses as are based on circumstances established by the evidence. It does not require the jury to acquit because of evidence which, if believed, would establish facts consistent with innocence, but which evidence the jury is justified in disbelieving.' Carleton v. State, 43 Neb. 373, 61 N. W. 699.

"The jury had for its consideration the evidence found at the scene of the crime * * *. This evidence, together with other facts not now summarized, was clearly sufficient, if believed, as it apparently was, to sustain the conviction. Defendant's evidence was either in denial or explanation of the state's evidence and an alibi. His principal alibi witness admitted that he had pleaded guilty to a felony. The defendant's evidence, if true, would be inconsistent with his guilt. But the jury had the right to reject and disregard, as it evidently did, the testimony as improbable and untrue. Smith v. State, 61 Neb. 296, 85 N. W. 49."

The ultimately applicable rule in the case at bar is that: "This court, in a criminal action, will not interfere with a verdict of guilty, based upon conflicting evidence, unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to support a finding of guilt beyond a reasonable doubt." Williams v. State, 115 Neb. 277, 212 N. W. 606.

The material evidence adduced by the State may be summarized as follows: At approximately 12:30 a. m., December 22, 1947, a bartender employed at the Eagles Lodge in South Omaha closed down the bar, located adjacent to the clubroom in the basement of the lodge hall. He checked to see that all windows, except those

located in a small kitchen and storage room, were closed in the basement, and then turned off the lights. He closed and locked all barroom doors and received from an employee in the Omaha office of the American District Telegraph Company, which furnished automatic burglar alarm and fire protection, an oral confirmation by telephone that the barroom burglar alarm system was in proper order, thus affirming that all necessary electrical devices which were connected with it had been put into operation by closing and locking the doors leading into the barroom where all cash receipts were left in a cabinet over night. He then left the building by the front door, locking the doors leading into the clubroom in the basement, and the outer door leading into the building.

At 1:20 a. m. the barroom burglar alarm was set off, and the police were immediately notified by the telegraph company from its Omaha office. Police in several cars drove almost immediately to the Eagles Lodge and two detectives, while checking the exterior of the building, exchanged several pistol shots with an unidentified man who fled from the scene and was pursued but not apprehended. A basement window on the east side at the northeast corner of the building, not theretofore observed to have been opened, was found open and two crowbars were found lying on the window sill. At another basement window on the west side of the building, another officer saw a shadow. He remained at that window, sawed-off shotgun in hand, to watch while other officers and a telegraph company employee first unlocked the building's outer door, then the inner doors, and entered the clubroom in the basement, and until "somebody hollered that they had the man."

The defendant Kitts, four times previously convicted as a felon, wearing gloves, armed with a fully-loaded Colt 38 special pistol protruding from his right pants pocket, was found concealed behind some tables stacked

in the clubroom, adjacent to the barroom in the basement. On the floor near the defendant was found an unzipped kit, containing 76 loaded shells which fit defendant's pistol, paraphernalia, and various kinds of tools which the testimony of a police expert disclosed were suitable and generally used by burglars for breaking and entering buildings and safes. The nature of each, and the use to which each tool in the kit could be put by a burglar, was explained by an expert, who said: "They are the most complete and finest set of burglary tools that I have ever seen in one collection."

Examination of a door leading from the clubroom into the barroom disclosed that the door had been forced or pried open at a point near the lock and that traces of the application of force were there manifest by impressions in the wood caused by use of some of the burglar tools heretofore discussed and described, which tools were fitted by police into the marks that appeared on the door around not only the lock on the door, but also on the window through which the other unidentified person had evidently entered and escaped.

Defendant testified in substance, without corroboration from any other witness, that he walked into the lodge hall at an hour which he could not fix, by following other persons through the open door, a bingo game being the thing that attracted him to the building; that he sat down in the basement clubroom, somewhat intoxicated, and groggy from protracted excessive consumption of alcoholic liquor; that becoming sick to his stomach, he started for the men's toilet, but inadvertently entered a room immediately adjacent to the ladies' rest room; that discovering where he was, he sat down and remained there an indeterminable length of time, until he heard shots fired and persons moving about outside the building, when he came out and, confused, concealed himself behind the tables. He denied that he broke and entered the place in any manner, and denied that he

had ever seen or had any custody or possession of the burglar tools found near him.

Officers who had an opportunity to observe defendant in the basement where he was arrested and in jail where he was booked for investigation testified substantially that defendant did not, by speech, action, behavior, or odor, manifest any of the signs which would ordinarily indicate that he had been under the influence of or had recently consumed any alcoholic liquor.

In the light of the rules heretofore stated, we conclude that the evidence was amply sufficient to sustain the verdict and sentence.

In connection with defendant's second contention, this court has held that: "If the voir dire examination of a juror considered as a whole does not show incompetency, a challenge upon that ground is properly overruled, although during his examination statements are made which, if unexplained, might be ground for challenge." Keeler v. State, 73 Neb. 441, 103 N. W. 64. See, also, Whitcomb v. State, 102 Neb. 236, 166 N. W. 553.

In Basye v. State, 45 Neb. 261, 63 N. W. 811, this court held: "The fact of qualifications of a juror, when challenged for cause, is to be determined by the trial court from a consideration of his entire examination and such other evidence and circumstances as tend to throw light upon the subject. The appearance and general demeanor of the juror while being examined may be taken into consideration in determining his competency to serve.

"The finding of the trial court, in deciding a challenge for cause, will not be set aside by the appellate court, unless it is clearly wrong.

"An opinion formed by a juror does not affect his competency, or afford cause for challenge, unless it is unqualified as to the guilt or innocence of the accused of the offense charged."

The record does disclose answers to questions propounded by defendant's counsel upon voir dire, which

standing alone and unexplained, would seemingly disqualify the juror. Such answers were, however, simply hypothetical answers given in answer to hypothetical questions, qualified by assumed implications, without full disclosure of their factual significance or proper legal application. After proper disclosure and explanation thereof and further proper inquiry by the court, it was disclosed that she was qualified to serve. An examination of all the questions and answers discloses that she had never formed or expressed an opinion with regard to the guilt or innocence of accused, and that she could and would try the case fairly and impartially upon the evidence and in conformity with the law as set forth in the court's instructions. From a consideration of the whole examination, the trial court could and did reasonably and fairly conclude that the juror was competent. We are therefore unable to conclude that denial of defendant's challenge for cause was clearly wrong.

Defendant concedes the rule to be that: "Where a deceased witness testified upon a former trial of the same party for the same offense, being brought 'face to face' with the accused and cross-examined by him, it is competent, upon a subsequent trial, to prove the testimony of such deceased witness, and such proof does not violate the provisions of the constitution of the state which gives to the accused the right to 'meet the witnesses against him face to face.'" Hair v. State, 16 Neb. 601, 21 N. W. 464.

In the case at bar, however, only a part of the testimony given at a former trial by a police officer thereafter deceased, was offered and read by the State. In that connection, defendant argued that the State should have been required to offer and read all of such witness' testimony. During the trial defendant objected to counsel for the State reading such testimony, "unless the STATE reads all of the testimony." The objection was overruled and the court stated: "He may read what he cares to read and you may read whatever you care

to read that is material to the present case \* \* \* the present trial."

After the State had offered part of such evidence, defendant was given permission by the court to take all of the evidence for examination and study over adjournment. Thereafter, without objection, defendant offered and read such competent, relevant, and material portions of the evidence adduced as he desired, including both direct and cross-examination of such witness.

This court has never passed directly upon the question, but other courts have done so, and the logical rule seems to be that when the State offered the testimony of such a deceased witness, it was analogous to the situation presented if the witness were living and had been offered to testify for the State. In other words, counsel for the State may in such a case offer and read such testimony as he desires, to which no objection is made or which is competent, relevant, and material under the issues presented, and is not required to offer or read all of the testimony.

On the other hand, counsel for defendant may offer and read, if he so desires, not only the cross-examination but also any omitted portions of the direct evidence, as evidence introduced by him who first offered it. Both situations are, however, subject to the test of competency, relevancy, and materiality. Waller v. State, 102 Ga. 684, 28 S. E. 284; Annotation, 159 A. L. R. 119.

Defendant cites no authority, and we find none requiring the State to offer and read all of such evidence. We conclude that defendant's third contention has no merit.

The case at bar was set for trial on March 20, 1950, in conformity with section 29-1821, R. R. S. 1943. On that date, defendant was not present in court, so the trial court adjourned the case until March 21, 1950, and overruled defendant's application for a continuance until May 1, 1950. On March 21, 1950, defendant moved for a rescinding of the court's order of the previous day and

for a continuance until May 1, 1950, contending that because of the previous publication of newspaper articles, defendant's right to a fair trial was prejudiced. The motion was overruled, and we conclude properly so.

The ten published articles offered in support of such motion, appeared during the period from January 23, 1950, to March 17, 1950. The jury was not selected until March 22, 1950. Therefore, defendant had ample opportunity to have determined on voir dire examination whether any of the prospective jurors had formed or expressed an opinion as to the guilt or innocence of the defendant as a result of having read such articles. He took advantage of that opportunity with reference thereto, and cannot now complain that such articles prejudiced his right to a fair trial. The provisions of sections 25-1623 and 29-2006, R. R. S. 1943, clearly manifest that voir dire furnishes a defendant ample opportunity to establish whether or not prospective jurors have been prejudiced by such articles.

Likewise, seven such articles in the same category were offered in connection with defendant's motion for a new trial. All of them were published during the period from January 28, 1950, to the morning edition of March 22, 1950, prior to selection of the jury. All other articles so offered were published during the period of the trial from March 22, 1950, to March 30, 1950. An examination of them discloses that they contained simply a factual report of the proceedings without falsification, unfair or inflammatory elaboration, or distortion. In that connection, we find no reason for granting a new trial.

Further, the record discloses that once the jurors were sworn, and thereafter from adjournment to adjournment of the trial, the court continuously, meticulously, and at great length, with unusual clarity and emphasis, admonished the jury to keep an open and impartial mind, and not talk with each other or with any other person about the case, and not to read anything published in the newspapers or listen to anything that might be broad-

cast over the radio concerning the trial during its progress.

Nevertheless, on March 24, 1950, during the trial, defendant moved that the court interrogate the jury as to whether any member thereof had read an article published on March 24, 1950, and if so, to instruct the juror or jurors to disregard the article as false and untrue. There was no showing of any kind that any juror had violated in any manner the admonitions of the court, and the court overruled the motion. In the light of the record, and an examination of the article, we conclude that the ruling thereon was without prejudice to defendant.

In that regard, a recent case, State v. DeZeler, 230 Minn. 39, 41 N. W. 2d 313, sustains such conclusion. Therein it was said: "It was not error to deny defendant's repeated requests that the jury be polled to determine if they had read certain newspaper articles pertaining to the crime and the conduct of the trial. On several occasions the trial court cautioned the jurors not to read the newspapers. Where the jury has been clearly admonished not to read newspaper accounts of the trial, the granting or denial of a defendant's request that the jurors be interrogated during the trial as to whether they have read newspaper accounts or headlines rests in the sound discretion of the trial court. People v. Phillips, 120 Cal. App. 644, 8 P. (2d) 228; 23 C. J. S., Criminal Law, § 1449. When a jury has been clearly admonished not to do a certain act, the mere opportunity to violate that admonition, without a vestige of proof of its violation, provides no basis upon which a court of review can find that the trial court has abused its discretion in refusing to investigate the jury for such possible misconduct. As an essential of a fair and impartial trial, there is no presumption that the jury is likely to take advantage of every opportunity to disregard the cautionary instructions of the court. It is also to be noted that the newspaper articles which were sub-

mitted to the trial court as special exhibits were not so inflammatory, distorted, or misleading that the trial court, in the light of its cautionary instructions, could not have found in the exercise of a sound discretion that a reading thereof by any juror would be nonprejudicial. State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155; State v. Briggs, 122 Minn. 493, 142 N. W. 823; State v. Williams, 96 Minn. 351, 363, 105 N. W. 265, 270; see, Annotation, 86 A. L. R. 928."

Finding no error in the record prejudicial to defendant, we conclude that the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.