[No. 35036.  Department One.  April 21, 1960.]

THE STATE OF WASHINGTON, *Respondent*, v. RONALD WAYNE
MOE, *Defendant*, PHILIP CLAY TILTON, *Appellant*.[1]

[1]Reported in 351 P. (2d) 120.

*Henry Opendack*, for appellant.

*Charles O. Carroll* and *Frank L. Sullivan*, for respondent.

OTT, J.—Philip Clay Tilton was arrested upon a warrant issued pursuant to an information charging him with the offense of burglary in the second degree, committed in King county on May 17, 1958. Tilton pleaded not guilty and was released on bail. Early in the morning of October 23, 1958, Tilton allegedly participated in another burglary and was shot in the hand by a police officer when he attempted flight.

On the same day, at 2:30 p. m., Tilton's trial commenced before the superior court upon the second-degree burglary offense of May 17, 1958. His hand was bandaged, and his attorney promptly moved for a continuance, stating that his client had been shot in the hand by a police officer; that his client had been in the hospital on that day; that the bullet had been removed, and that tetanus and penicillin shots and other treatment had been administered. There was no contention that Tilton was unable, because of any ill effects from the treatment, to proceed with the trial. The court denied the motion. No error has been assigned to the court's denial of this motion. The incident has been detailed to make clear the issues to which error has been assigned, as they developed in the chronology of the trial.

After the jury was impaneled, the court adjourned for the day, instructing the jurors as follows:

"We are about to adjourn for the evening until 9:30 tomorrow morning, and I want to admonish you not to discuss this case with anyone or among yourselves, or at home, or any place. Keep open minds throughout the trial, and, if anything appears in the newspapers regarding this case or any of the participants do not read it."

At 9:30 a. m., October 24th, when the court resumed the trial, counsel for the defendant moved for a continuance:

"If it please the Court, I would like to move at this time for a continuance in behalf of the Defendant Tilton for the

reason I feel that it is impossible for him to get a fair trial at this time, based on certain newspaper articles which appeared in the . . . Seattle Times, Thursday, October 23, 1958, . . .

"The article is captioned, 'Police Fire at 2 Fleeing Burglars:

" 'Two men escaped through a fusillade of police bullets at 5 o'clock this morning when they were surprised stealing a safe from the Footlight Tavern at 129 First Av. N.

" 'Their bullet-pocked and blood-stained pickup truck was found abandoned a few blocks away. A suspect, wounded in the hand, was arrested shortly afterward. . . .

" 'A 28-year-old man, wounded in the hand, was arrested in his downtown hotel shortly afterward. . . .

" 'Detective Sergt. Wendell Paust said the man was scheduled to appear in Superior Court today on another charge of burglary. . . .'

"The second item was in the Seattle P. I., Friday, October 24, 1958, is entitled, 'Police Upset Plan For Quiet Safe Job.

" 'A quiet and orderly theft of a safe in the wee small hours yesterday morning erupted into gunfire and a chase. . . .

" 'Then detectives arrested a suspect in a downtown hotel. He had a hand wound, but claimed he got it falling through a glass door. The detectives didn't buy the story. They jailed him.

" 'They said he was involved in a burglary of a Lake Union marina last spring.' "

The motion for a continuance was denied. Counsel for the defendant then requested that the jury be interrogated regarding what they may have heard or read of the defendant's alleged participation in the second burglary, as follows:

"I would request that the jury be asked whether or not they heard that newscast. The complete account was given on the ten o'clock news, using the defendant by name. . . .

"I feel that in view of these articles, the first article indicates that the man that was apprehended was wounded in the hand; that he was due to appear in Superior Court on a burglary charge yesterday, which is the case with this defendant.

"The article today states similar facts as to the wounding in the hand and it also states that he was involved in the Lake Union marina burglary last spring, which is this very

case. Whether your Honor feels that the television material is hearsay or not it certainly was there. It was presented and it certainly is prejudicial.

"Anything that comes at the beginning of a case, such as this before the State has begun its case or any time during the case where the facts are so similar that any person of average intelligence can connect these facts with this defendant, even eliminating the television newscast, I feel is prejudicial to this defendant and I think hearsay or not the television broadcast is certainly prejudicial when it specifically named this defendant by name.

"I submit that this defendant cannot get a fair trial under these circumstances and this case should be continued."

The motions for a continuance and to interrogate the jury were denied. From a judgment and sentence imposed upon the jury's verdict of guilty, the defendant has appealed.

The sole assignment of error is that

"The court erred in failing to grant appellant's motion for a continuance resulting from prejudicial newspaper, radio and TV publicity concerning appellant's involvement in a burglary other than the one on which he was being tried."

Granting or denying a continuance in a criminal proceeding rests within the sound discretion of the trial court. *State v. Waite*, 141 Wash. 429, 251 Pac. 855 (1926); *State v. Wallace*, 114 Wash. 586, 195 Pac. 993 (1921). The court's exercise of discretion will not be disturbed on appeal unless it is affirmatively shown by the record that the court abused its discretion. *State v. Collins*, 50 Wn. (2d) 740, 314 P. (2d) 660 (1957).

Appellant contends that the publicity concerning his alleged participation in the subsequent burglary of October 23, 1958, prejudiced the minds of the jurors to such an extent that he was not afforded a fair trial. We do not agree.

The members of a jury are required to take an oath ". . . well and truly to try the issue between the state and the defendant, *according to the evidence.* . . ." (Italics ours.) RCW 10.49.100.

In the instant case, the jury, upon separation, were ad-

monished to keep open minds throughout the trial, and to refrain from reading newspaper articles concerning the trial or any of the participants. By instruction No. 13, the jury were instructed that the defendant could be found guilty only upon the evidence adduced at the trial and the court's instructions in relation thereto. It is presumed that juries follow the instructions of the court. *State v. Eggers,* 55 Wn. (2d) 711, 349 P. (2d) 734 (1960); *State v. Cunningham,* 51 Wn. (2d) 502, 319 P. (2d) 847 (1958). A juror is selected as such because he has met the statutory standards of intelligence, fairness, and integrity required by RCW 2.36.060. There is a presumption that he will be faithful to his oath and follow the court's instructions. There is no presumption that he will consider as evidence statements he has heard or articles he has read during adjournment periods. As was said in *State v. Pepoon,* 62 Wash. 635, 644, 114 Pac. 449 (1911):

" . . . In addition, we must indulge some presumptions in favor of the integrity of the jury. It is a branch of the judiciary, and if we assume that jurors are so quickly forgetful of the duties of citizenship as to stand continually ready to violate their oath on the slightest provocation, we must inevitably conclude that a trial by jury is a farce and our government a failure. . . . "

See, also, *State v. Adamo,* 128 Wash. 419, 223 Pac. 9 (1924).

■ Appellant insists, however, that he was prevented from showing the bias or prejudice of the members of the jury because the court denied his request to poll the jury during the trial regarding what all or any one of them had heard or read concerning appellant's alleged participation in the second burglary. Appellant cites no authority to support his contention. Cases from other jurisdictions are to the contrary. *Ford v. United States,* 233 F. (2d) 56 (1956); *Kitts v. State,* 153 Neb. 784, 46 N. W. (2d) 158 (1951); *State v. DeZeler,* 230 Minn. 39, 41 N. W. (2d) 313, 15 A. L. R. (2d) 1137 (1950); *People v. Brac,* 73 Cal. App. (2d) 629, 167 P. (2d) 535 (1946); *People v. Harrison,* 317 Ill. App. 460, 46 N. E. (2d) 103 (1943); *State v. Bentley Bootery,* 128 N. J. L. 555, 27 A. (2d) 620 (1942); *People v. Phillips,* 120 Cal. App.

644, 8 P. (2d) 228 (1932). See, also, *People v. Green*, 323 Mich. 128, 35 N. W. (2d) 142 (1948).

By the manner of selection and the *voir dire* examination, jurors establish themselves to be unbiased, unprejudiced, and qualified to determine the issues involved. If a defendant's subsequent conduct in a collateral matter becomes known to a juror during the trial, the juror's oath and the instructions of the court are the defendant's safeguard against possible bias or prejudice resulting from the juror's consideration of a collateral matter as evidence in the case.

The court did not err in refusing to grant appellant's motion for a continuance and his request to poll the jury.

We find no merit in appellant's assignment of error.

The judgment and sentence is affirmed.

WEAVER, C. J., MALLERY, and DONWORTH, JJ., concur.

HUNTER, J. (dissenting)—The trial court abused its discretion in denying the defendant a continuance. Unquestionably, a juror is presumed to be fair, but this does not mean that a person might not be denied a fair trial where prejudicial or improper matters have come to the jurors' attention. Under the circumstances, it was most probable that, at least, one member of the jury identified the defendant as the person referred to in the publicity which was brought to the trial court's attention. The defendant would be highly prejudiced if he were so identified. To require the defendant to be tried before a jury with even one juror possessed of such knowledge would be a denial of a fair trial. Either it should have been determined that the jury was free from such knowledge, or a continuance should have been granted. The trial court did neither.

The jury verdict of guilty should be set aside and a new trial granted.

June 17, 1960. Petition for rehearing denied.