[Nos. 39801, 39809, 39828.    Department One.    August 8, 1968.]

THE STATE OF WASHINGTON, *Respondent,* v. MICHAEL JAY PARKER, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. ALFRED LEWIS, *Appellant.*

THE STATE OF WASHINGTON, *Respondent,* v. CLARENCE M. SCOTT, *Appellant.**

*Richard J. Glein* and *Matt M. Sayre,* for appellants Parker and Lewis (appointed counsel for appeal).

*Daniel G. Goodwin,* for appellant Scott (appointed counsel for appeal).

*Reported in 444 P.2d 796.

270

*Charles O. Carroll, Gwynn Townes,* and *Michael Dijulio,* for respondent.

Wiehl, J.†—Defendants, Clarence M. Scott, Alfred Lewis and Michael Jay Parker were convicted by a jury of the crime of robbery. The facts relevant to their appeal from the judgments entered by the trial court are the following.

On January 24, 1967, a Seattle transit driver, who was seated in his bus reading a newspaper while waiting at the "end of the line" so that the schedule of the bus he was driving could be synchronized with other connecting buses, was commanded by three young men to give them his money. One of the three brandished a small-caliber revolver. The father of the bus driver was the only passenger present on the bus at the time and he drew a gun from his lunch bag and told the three robbers to "hold it right there." The three fled from the bus with the transit company money changer containing approximately $52. The driver's father followed them in hot pursuit. The defendant, Parker, fled to the west and was arrested on a subsequent date, the other two defendants fled to the north where they ran into the waiting arms of a neighborhood merchant patrolman who heard a shot which the bus driver's father had fired into the ground hoping he might attract the private policeman's attention.

At the trial, both the bus driver and his father positively identified the defendants as the robbers, and the merchant patrolman testified that the two men he apprehended running from the bus were the defendants, Scott and Lewis. Scott admitted to a police officer his participation in the robbery and named Lewis and Parker as his cohorts.

In a hearing out of the presence of the jury, the court excluded Scott's statements implicating the codefendants, but did allow the police officer to testify that Scott "orally admitted his participation in this robbery." Additional facts will be presented as necessary to a discussion of defendants' five assignments of error.

†Judge Wiehl is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

Defendants assign error in the first instance to the refusal of the trial court to grant their motion for a continuance. The basis for the motion was the defendants' position that they would be prejudiced by newspaper accounts describing a robbery and killing of a bus driver only 6 days prior to trial. They admit there could have been no inference by the jury that they had committed the killing since it was clear they were in custody at the time. They limit their argument to the potential prejudice flowing from the similarity of the crimes.

The rule in this state with regard to such continuances is stated in *State v. Bailey,* 71 Wn.2d 191, 195, 426 P.2d 988 (1967) and *State v. Moe,* 56 Wn.2d 111, 114, 351 P.2d 120 (1960):

> Granting or denying a continuance in a criminal proceeding rests within the sound discretion of the trial court. *State v. Waite,* 141 Wash. 429, 251 Pac. 855 (1926); *State v. Wallace,* 114 Wash. 586, 195 Pac. 993 (1921). The court's exercise of discretion will not be disturbed on appeal unless it is affirmatively shown by the record that the court abused its discretion. *State v. Collins,* 50 Wn. (2d) 740, 314 P. (2d) 660 (1957).

In *State v. Collins,* 50 Wn.2d 740, 314 P.2d 660 (1957), the defendant made the same argument as is made in the instant case; namely, that a continuance was required because news coverage had inflamed public passion and prejudice in the community to such an extent that a fair trial could not be had at that time. There, we said we could find no indication of such passion and prejudice.

In the instant case, we have searched the record and find no indication of passion and prejudice. The newspaper articles which were made a part of the record were not inflammatory and there is no indication that defense counsel had any difficulty in selecting an impartial jury panel. In fact, counsel admit to not having exercised all of their allowed peremptory challenges. We are unable to find any abuse of discretion on the part of the trial court.

Secondly, defendants urge they were prejudiced by being tried jointly. We disagree. We again are dealing with

a question of the discretion of the trial court. That discretion is reviewable only for a manifest abuse thereof. *State v. Courville,* 63 Wn.2d 498, 387 P.2d 938 (1963); *State v. Baker,* 150 Wash. 82, 272 Pac. 80 (1928). Two judges of the superior court passed on and denied the motions for separate trials at different times. Counsel urged them to allow separate trials because defendants would thus be allowed more peremptory challenges to jurors. We have already pointed out that the available peremptories were not exercised, and therefore, consider the argument without substance. Counsel further urged separate trials because the defendants told conflicting stories concerning their activities on the night of the robbery. The trial court ruled that to grant separate trials on such grounds would be to say that at least one of the defendants has the right to fabricate a story or alibi and that this right must be protected by granting separate trials. The instant case was one in which almost all evidence was direct eye-witness evidence and which applied to all three defendants. We can find no abuse of discretion.

A related, third assignment of error is made by the defendants, Parker and Lewis, to the failure of the court to give a cautionary instruction which would have forbidden the jury from using Scott's incriminatory admission against them. Prior to the testimony of the officer who told of Scott's admission, the court held a hearing out of the presence of the jury and decided that nothing Scott said which would incriminate the other defendants could be admitted. The testimony of the officer on this issue was strictly limited to:

> Q. Will you tell us what he indicated to you so far as he, himself, is concerned? A. He orally admitted his participation in this robbery.

Defendants' argument is rendered moot by a recent decision of the United States Supreme Court, *Bruton v. United States,* 391 U.S. 123, 20 L. Ed. 2d 476, 88 Sup. Ct. 1620 (1968), which held that an instruction such as the one sought by the defendants in the instant case cannot cure the prejudice

flowing to the accused from the admission into evidence of an extrajudicial confession by a codefendant which incriminates the defendant.[1] The court said at 137, that the "effect is the same as if there had been no instruction at all."

We thus proceed to the underlying right which formed the basis for the *Bruton* decision, *i.e.* the right guaranteed to a defendant by the Sixth Amendment and made obligatory upon the states by the fourteenth amendment to the United States Constitution[2] to confront and cross-examine witnesses who testify against him. The defendant in the *Bruton* case was named in the extrajudicial confession of a codefendant and testified to by the postal inspector to whom the confession was made. The court found that such testimony violated defendant's constitutional right to confront his accuser and to cross-examine him because the evidence was hearsay, which was not capable of being tested in court as to its veracity and reliability.

In the instant case, the defendants, Parker and Lewis, were not incriminated by Scott's extrajudicial admission, and we, therefore, find that none of the rights afforded criminal defendants by the *Bruton* case were denied. The only evidence which incriminated the defendants, Parker and Lewis, was elicited from eye-witnesses who confronted the defendants in court and were subject to the cross-examination of the defense.

Mr. Justice White, although dissenting in *Bruton* on the basis of his belief that juries could effectively be instructed not to regard the hearsay admission of a codefendant against

---

[1]The Supreme Court of the United States had earlier held such confessions admissible with a cautionary instruction. *Delli Paoli v. United States,* 352 U.S. 232, 1 L. Ed. 2d 278, 77 Sup. Ct. 294 (1957). This court also held in the past that such confessions of a codefendant could be admitted if a cautionary instruction was given to the jury to disregard its application to the defendant. *State v. Badda,* 63 Wn.2d 176, 385 P.2d 859 (1963); *State v. Taylor,* 47 Wn.2d 213, 287 P.2d 298 (1955); *State v. Goodwin,* 29 Wn.2d 276, 186 P.2d 935 (1947).

[2]*Pointer v. Texas,* 380 U.S. 400, 13 L. Ed. 2d 923, 85 Sup. Ct. 1065 (1965); *Douglas v. Alabama,* 380 U.S. 415, 13 L. Ed. 2d 934, 85 Sup. Ct. 1074 (1965).

a defendant, sought to recommend at 143, a method by which a court could apply the rule adopted by the majority:

> I would suppose that it will be necessary to exclude all extrajudicial confessions unless all portions of them which implicate defendants other than the declarant are effectively deleted. . . . To save time, money, and effort, the Government might best seek a ruling at the earliest possible stage of the trial proceedings as to whether the confession is admissible once offending portions are deleted.

As has been pointed out above, this was exactly the procedure followed in the instant case. Since Scott's out-of-court admission, which was testified to in court by a police officer, was strictly limited so as not to implicate or incriminate the other defendants, we find no rights of the other defendants violated.

The fourth assignment of error is directed to the trial court's refusal to grant defendants' motion for mistrial based on a statement made by the deputy prosecutor in his opening statement that the state would introduce evidence of other similar acts in which the three defendants were involved:

> Now, this specific incident occurred on the 24th of January, 1967, and the State intends to introduce evidence of other similar acts involving these defendants at different times, at times other than the 24th of January, 1967.

We find this assignment of error without merit. At the time of the motion for a mistrial, the trial court aired defendants' arguments in support of their motion and decided that the opening statement was made in the good faith belief that the evidence would be admissible. The deputy prosecutor intended to introduce the evidence of other similar acts, and had prepared a memorandum of authorities in support of his position. The court ruled that the deputy prosecutor was not allowed to introduce the evidence and the deputy prosecutor complied with that ruling. The record supports the propriety of the trial court's ruling. Such a statement is not prejudicial error if the

prosecutor in good faith thought he would be able to introduce the evidence related. The burden of showing bad faith is upon defendants. *State v. Lyskoski,* 47 Wn.2d 102, 287 P.2d 114 (1955); *State v. Farley,* 48 Wn.2d 11, 290 P.2d 987 (1955).

Defendants seek also to tie the deputy prosecutor's statement with an answer of the bus driver on cross-examination:

Q. Now, are your headlights on while you are parked in this manner at the end of the line? A. My headlights were on that night, yes, sir. Q. Is this customary when you are at the end of a line? A. Because of the recent rash of holdups, we were leaving our lights on. Q. All right.

We are unable to make the connection defendants urge. The bus driver's testimony was elicited on cross-examination and cannot be attributed to any misconduct of the deputy prosecutor. The defendants neither excepted to nor requested the testimony to be stricken.

■ Finally, defendants claim error was committed when the trial court refused to give their proposed instruction on circumstantial evidence. Defendants cite *State v. Douglas,* 71 Wn.2d 303, 307, 428 P.2d 535 (1967), which quoted *State v. Gillingham,* 33 Wn.2d 847, 854, 207 P.2d 737 (1949):

[I]n order to sustain a conviction on circumstantial evidence, the circumstances proved by the state must not only be consistent with each other and consistent with the hypothesis that the accused is guilty, but also must be inconsistent with any hypothesis or theory which would establish, or tend to establish, his innocence.

The trial court correctly ruled that the requested instruction need not be given because the evidence was almost totally direct rather than circumstantial.

The judgments are affirmed.

WEAVER, HUNTER, HALE, and NEILL, JJ., concur.